R. C. PRATT, ADMINISTRATOR OF THE ESTATE OF W. H. STONE, Deceased, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Negligence:** PROXIMATE INJURY.   In an action for injuries received at a railroad crossing, it appeared that decedent's team became frightened and unmanageable by steam escaping from a mill.
1   The court charged, if defendant company was negligent in failing to ring the bell or blow the whistle of its approaching train, still,

2 if, by reason of the team becoming unmanageable, the giving of the signals would not have prevented the injury, then it could not be said to have been caused by such failure. *Held,* a sufficient charge as to the effect of the conduct of the team on the question of the proximate cause of the injury. ·

CONCURRING NEGLIGENCE. A railroad company whose negligence in approaching a crossing was a proximate cause of the death of a 1 person at such crossing, is not relieved from liability on the ground that the team which the decedent was driving was frightened and unmanageable and that such fright was a concurring cause.

JURY QUESTION. Where it appeared that the team driven by the deceased on approaching a railroad crossing became frightened 3 and unmanageable, the question whether defendant was negligent in sounding the whistle when near the crossing, thereby increasing the fright of the team, with which the train immediately after collided, was properly left to the jury.

SAME. The question whether defendant railroad company was negligent in not having a flagman at the crossing where plaintiff's 6 intestate was killed, is properly submitted to the jury although there is evidence that the team of the deceased was almost or quite unmanageable, and that his attention was given to them.

INSTRUCTIONS. An instruction that if the circumstances and surroundings of the railroad crossing at which plaintiff's intestate was killed were such that, with the signals given of the approach of defendant's train and the speed the train was going, persons at and near the crossing using ordinary care to learn of its approach 4 had reasonable warning thereof, defendant was under no obligation to check the speed of the train, does not place too much stress on the giving of signals where there is evidence that the view of the crossing was obstructed and that the train was running at a reckless rate of speed.

SAME. Where the undisputed evidence showed that a view of the 5 track was partially obstructed, it was not error for the court to assume in its charge that there were obstructions to sight and hearing of an approaching train.

SAME. Under Code, section 2072, requiring that a locomotive whistle be sounded sixty rods before a crossing is reached, except in cities or towns, where it need not be sounded unless required by an 7 ordinance thereof, failure of the court, in an action for injuries at a crossing within the limits of a town having no such ordinance, to charge that it was defendant's duty to sound the whistle, was not error.

EVIDENCE. *Findings.* In an action for injuries at a crossing, there was evidence that the view of the track was obstructed by a corn- 8 crib, and then by a section house. *Held,* that a special finding

that if deceased, while approaching the track, had looked, he would not have been able to have seen the train from the time he passed the corncrib until he reached the crossing, was not in conflict with the evidence.

SPECIAL FINDINGS.   In an action for injuries at a crossing, the court requested special findings as to whether the attention of deceased was so divided by the fright of his team, that, under the circumstances, he was not guilty of negligence in not stopping and listening before going on the crossing, and whether his attention was so diverted that he was not guilty of negligence in not knowing the approach of the train.   *Held*, that the findings requested called for important facts bearing on the question of contributory negligence, and were not error.   .

SAME.   Division of a requested interrogatory into two, containing every material fact in the one requested, is not prejudicial error.

*Appeal from Cass District Court.*—HON. WALTER I. SMITH, Judge.

TUESDAY, JANUARY 24, 1899.

THE petition and amendments thereto are too lengthy to be even fully summarized.   It is sufficient to say that it charges that on the tenth day of March, 1894, deceased, W. H. Stone, came to his death, without fault on his part, by being struck by one of defendant's passenger trains at a street crossing in Anita, while in his wagon, passing over defendant's track at said crossing; that his death was caused by reason of the negligence of the defendant's servants in failing to give the required and proper signals and warnings of the approach of said train to said crossing, by running said train at a high, unusual, and reckless rate of speed, and by sharply sounding the whistle when near the crossing; also, that defendant was negligent in not providing a flagman at said crossing.   Plaintiff asks judgment for fifty thousand dollars.   The defendant answered, admitting its corporate capacity, and that it was operating a railway through the town of Anita, and, in effect, denying the other allegations of the petition.   Verdict and judgment were rendered in favor of the plaintiff for five thousand and twenty dollars.   Defendant appeals.—*Affirmed.*

VOL. 107 Ia—19

*J. B. Rockafellow, Robert Mather,* and *Carroll Wright* for appellant.

*Swan & Bruce* for appellee.

GIVEN, J.—I.   Except in a few particulars, that will be mentioned, there is no conflict in the evidence.   The following is a sufficient statement of the facts for the purposes of this appeal:   Defendant's railway runs east and west through the town of Anita; the depot building being on the north side of the track, and east of the crossing of a north and south street, called "Chestnut."   Part of the town is situated south, and part north, of the railway; and said crossing, being the principal one, is much used.   The track east from the crossing is straight for a long distance, and slightly down grade to the west.   Some distance south of the track, and east of Chestnut street, was a steam mill, with a driveway around it and between it and a large corncrib standing north, between the mill and the track, and running lengthwise east and west.   The mill and crib obscured a view of trains coming from the east by persons going north on the street until the northwest corner of the crib was passed, and from there the view was quite extended.   There is some conflict as to the distance from the track to the crib, from the northwest corner of the crib to the crossing, and the extent of the view of the track to the east. The exact distances are not very material, as it is manifest that, taking the shortest distances claimed, deceased had ample opportunity to have seen the train in time to have avoided the collision, if nothing had occurred to prevent him from doing so.   In the forenoon of March 10, 1894, deceased, accompanied by his wife, drove his two-horse team and wagon into the north part of the town; and, after leaving Mrs. Stone at a store he drove south, over the crossing, to the south side of the mill, and from there, around the mill, out onto Chestnut street, and thence north onto the crossing, where the fast passenger train going west struck the wagon and killed Mr.

Stone. Plaintiff alleges in his petition that the team became frightened by steam escaping from the mill, and that by the time the street was reached it "became unmanageable, or very difficult to control and manage." It is also alleged that by reason of the conduct of the team the attention of Mr. Stone was necessarily given entirely to its management, and that, therefore, he could not and did not observe the approach of the train. While there is much diversity in the testimony as to the conduct of the team, there can be no doubt that the horses were greatly frightened, and that although Mr. Stone, as all agree, made strenuous efforts to control them, he did not succeed in doing so. Some question is made in argument whether the horses were entirely or only partially beyond the control of Mr. Stone. The jury found specially that they were only partially unmanageable and beyond his control. It is evident, however, that they were so much beyond his control that he was unable to stop them before reaching the crossing. Mr. Stone was familiar with that crossing, and knew that this fast train was due to pass about that time; and we may presume that he would not have gone upon the crossing when and as he did, if he could have controlled the team, and observed the approach of the train. As we view it, it is not material whether the team was entirely or only partially beyond his control. There is some conflict in the evidence as to what signals were given, and the speed of the train. These conflicts we will notice further on.

II.   Defendant's counsel say in argument "that if the team of the deceased rushed on the track at the crossing because they were frightened and unmanageable, and beyond the control of the driver, and that such condition of the team was due to the fright, for which defendant was in no manner responsible, then the fright was the proximate cause of the accident, or at least a concurring cause, and there can be no recovery." Appellee's counsel say "that when two causes combine to produce an injury, both of which are proximate in their character,—the one being the result of

culpable negligence, and the other an occurrence as to which neither party is at fault,—the negligent party is liable, provided the injury would not have been sustained but for such negligence." Appellant cites a number of cases,—among them, the following Iowa cases,—in support of its contention: *Knapp v. Railway Co.,* 65 Iowa, 91; *Handelun v. Railway Co.,* 72 Iowa, 709; *Moss v. City of Burlington,* 60 Iowa, 438; *Gould v. Railway Co.,* 66 Iowa, 590; *DeCamp v. Sioux City,* 74 Iowa, 392. While much is said in these cases which seems to support appellant's contention, the question under consideration was not directly passed upon in either of them. In the recent case of *Gould v. Schermer,* 101 Iowa, 583,—an action to recover damages for injuries sustained by plaintiff by reason of the alleged negligence of defendant road supervisor in constructing a bridge, by erecting a cattle pass under the same without authority,—the court instructed as follows: "That, if there were other causes than that of the cattle way or defective bridge concurring to produce the injury, plaintiff could not recover, unless these causes were also the wrongful act of the defendant." This court said: "Such instructions were erroneous, for the rule of law is well settled that the mere fact that some other cause operates with the negligence of the defendant to produce the injury does not absolve defendant from liability. His original wrong, concurring with some other cause, and both operating proximately at the same time in producing the injury, makes him liable, whether the other cause was one for which the defendant was responsible or not." This case is decisive of the question under consideration, and sustains appellee's contention as to the law.

III. Appellant insists that the court refused to instruct as to the fact that the team was frightened, so far as it affected the question of the proximate cause of the death of the deceased. After stating the issues, the court instructed that: "To recover damages from the defendant for the killing of W. H. Stone by the defendant's train, all the following matters must appear from the evidence: First, that the defendant was negligent in some one or more

of the particulars complained of in plaintiff's petition; second, that such negligence on defendant's part caused the death of W. H. Stone; third, that W. H. Stone was not guilty of negligence on his part that contributed to the injury; fourth, that the estate of W. H. Stone suffered injury by reason of his death. The burden rests with plaintiff to show all of said matters by the greater weight or preponderance of evidence. If all of said matters are thus shown, the plaintiff will be entitled to recover; but, if any one or more of said matters are not thus shown by the evidence, then your verdict must be for the defendant." Following this, the court instructed fully and clearly as to the duty of the defendant in respect to the matters charged as negligence, and that if defendant was negligent in any of said particulars, and such negligence caused the death of W. H. Stone, without fault or negligence on his part contributing thereto, the defendant was liable. Next in order the following was given: "(9) Unless it appears from the evidence that the defendant was negligent in the running and management of its train in one or more of the ways complained of, as before explained, then the plaintiff cannot recover; but, if such negligence is shown by the evidence, then it must also appear from the evidence that such negligence on the part of defendant caused the death of W. H. Stone. That is, it must appear from the evidence that but for such negligence the accident and consequent death of W. H. Stone would not have occurred. If it appears from the evidence that the defendant company was negligent in some one or more of the particulars complained of, as in failing to ring the bell or blow the whistle on approaching the crossing, still, if it appears from the evidence that, by reason of the team driven by Stone being unmanageable, the giving of said signals, or the placing of a flagman at said crossing, would not have prevented the injury, then it cannot be said that the failure of the defendant to give said signals, or to station said flagman at the crossing, caused the injury." The remaining instructions are as to the care to be exercised by persons when approaching railway crossings,

and as to the measure of damages. The eleventh paragraph submits the question whether the fright of the team was such as to excuse the deceased from stopping, looking, and listening for the approach of the train. Taking the view of the law that we do, we think the instructions were sufficiently full and explicit in the respect complained of.

IV. It is charged that defendant was negligent "by sharply sounding the whistle of the engine when near the crossing, and thereby frightening the decedent's horses." There was evidence tending to show that immediately before, or just at the time of, the collision, the whistle was sounded; and the court submitted to the jury the question whether the defendant's engineer was negligent in so doing. Appellant insist that there was no evidence to warrant the giving of this instruction, and cites *Schaefert v. Railway Co.,* 62 Iowa, 624, and *Ochiltree v. Railway Co.,* 99 Iowa, 373, to show that it would not be negligent to have sounded the whistle. Whether or not it was negligence to sound the whistle at that time depends upon the circumstances, and, under the circumstances of this case, the court could not say as a matter of law that it was or was not negligence, but properly submitted it to the jury.

In the seventh paragraph the court instructed that "if the cirmustances and surroundings of the crossings as shown by the evidence were such as that, with the signals that were given by the defendant of the approach of the train, and the speed the train was going, persons at and near the crossing, who were using ordinary care to learn of the approach of the train, had reasonable warning of its approach, then the defendant was under no obligation to check the speed of its train as it approached the crossing." Appellant insists that too much stress is laid upon the giving of signals; that if persons could see the approach of the train, though no signals were given, they were bound to keep off the crossing. This instruction was directly applicable to the alleged negligence in the speed of the train.

It is contended that the court erroneously assumed, in the sixth instruction, that there were obstructions which obscured the hearing and seeing of the approaching train.   There is no dispute that the mill and corncrib obstructed the view up to a certain point, and there is dispute as to whether the view was not also obstructed by a section house, and as to the extent of the view.   There was no error in this instruction.   There is an equally groundless complaint made of the ninth instruction.

The fifth instruction submitted the question whether the defendant was negligent in not having a flagman at the crossing.   It is insisted that, as the horses were unmanageable, the absence of a flagman had nothing to do with the accident.   It was for the jury to say whether, in view of the deceased's attention being given to the team, the presence of a flagman to warn him that the train was approaching might not have enabled him to turn the team out of the street.   In submitting the charge that defendant was negligent in failing to give proper signals by ringing the bell or blowing a whistle, the court instructed that it was the duty of the defendant "to ring the bell on its engine at least sixty rods before the train reached the highway crossing in question, and to ring said bell continuously until said crossing was reached," and that not to do so would be negligence.   Appellant cites section 2072 of the Code, requiring that the whistle shall be twice sharply sounded sixty rods before the road crossing is reached, " but at street crossings within the limits of cities or towns, the sound of the whistle may be omitted unless required by ordinance or resolution of the council thereof."   The town of Anita had passed no ordinance; hence, it was not required that the warning be sounded within the town limits.   The court properly instructed only as to whether or not the bell was rung.

The court submitted the following special interrogatory, which was answered in the negative:  "If the said Stone

while approaching the crossing in question had looked for the train approaching from the east, would he not have been able to see the train in question during all of the time he traveled from the northwest corner of the large crib in question until he reached the place of the accident?" Appellant insists that this answer is in conflict with the undisputed evidence. There is evidence tending to show that the location of the section house obstructed the view after the corncrib was passed. Therefore we cannot say that the answer has no support.

It is contended that the last two interrogatories submitted by the court did not ask the jury to find any particular question of fact. The first asked the jury to find whether the attention of deceased was so diverted by the fright of his team, the danger arising therefrom, and his efforts to control them, that, under the circumstances, he was not guilty of negligence in not stopping and listening before going on the crossing. The other required them to find whether his attention was so diverted that he was not guilty of negligence in not knowing of the approach of the train. These interrogatories, though calling for answers somewhat in the nature of conclusions, call for the finding of the jury as to ultimate and important facts bearing upon the question of contributory negligence.

Appellant submitted the interrogatory: "Were Mr. Stone's horses frightened, unmanageable, and beyond his control from the time they left the northeast corner of the mill until the accident happened?" The court submitted instead thereof the following: "(1) Were Mr. Stone's horses frightened from the time they left the northeast corner of the mill until the time of the accident? (2) Were Mr. Stone's horses unmanageable and beyond his control from the time they left the northeast corner of the mill until the time of the accident?" Appellant complains that the court divided his interrogatory into these two. The two contain all that appellant asked, and we fail to see any prejudice in the

manner in which they were submitted.   We do not discover any errors in the record, and the judgment is therefore AFFIRMED.