STONER-MCCRAY SYSTEM, Appellee, v. MANHATTAN OIL COMPANY, Appellant.

**CONTRACTS: Construction—Divisibility.** The question of the divisi-
1   bility of a contract becomes immaterial when plaintiff, suing on the contract, shows that he fully performed all parts of the contract.

**DAMAGES: Measure of Damages—Advertising Contract—Breach—**
2   **Re-Leasing.** In an action on a contract under which plaintiff agreed to furnish to defendant certain bulletin-board and wall-space advertising at a certain rental, which contract defendant had repudiated, *held,* a recovery was justified which included the rentals due at the commencement of suit, plus the present worth of the difference between the rentals which defendant had agreed to pay and the rentals which plaintiff would, during the life of the contract, receive by being compelled to re-lease to another.

**APPEAL AND ERROR: Waiver of Error—Motion for Directed Ver-**
3   **dict—Waiver of Ruling.** He who moves for directed verdict and

suffers an adverse ruling and thereupon introduces his testimony, must then renew his motion, or waiver of error, if any, in the adverse ruling will result.

**CONTRACTS:** Construction—''Bulletin Advertising''—Meaning of Term—Evidence. Evidence of the meaning of a term used in a contract is immaterial when such term manifestly is not used as descriptive of what either party was obligated to perform, such latter question being the sole matter at issue.

**EVIDENCE:** Best and Secondary—Copies—Proof of Accuracy. Copies of certain sketches of advertising designs held to be sufficiently verified as to accuracy to justify their reception in evidence, in view of the loss of the originals.

**APPEAL AND ERROR:** Review—Prejudicial Remarks of Court—Failure to Except—Effect. Error may not be predicated on remarks of the court to which no exceptions were taken.

**EVIDENCE:** Hearsay—Making of Leases. On the question as to what leases for advertising purposes plaintiff had made with certain property owners, testimony as to what a witness had been told by such property owners is pure hearsay on the substantive issue whether such leases had been made.

*Appeal from Polk District Court.*—CHAS. A. DUDLEY, Judge.

FRIDAY, MARCH 10, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION upon a contract, for the erection and painting of fifty bulletin boards, and the painting of a like number of wall signs, for advertising defendant's business in this state. Defendant admitted the contract, but pleaded plaintiff's failure to perform, on its part, and also interposed two counterclaims, one of which was withdrawn, before the submission of the case to the jury. Upon issues joined and not withdrawn, the case went to trial to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*J. A. Dyer* and *E. R. Mason,* for appellant.

*Miller & Wallingford,* for appellee.

DEEMER, J.—I. Plaintiff is engaged in constructing, erecting, and painting signs for advertising purposes, and defendant was engaged in the business of handling oils of various kinds, and particularly, what was known as "Trop-Artic," and "Non-Carbon Russian Oil." Desirous of advertising its products extensively over the state, it entered into a written contract with plaintiff, from which we extract the following:

"The party of the first part (plaintiff) agrees to erect and maintain in a first-class condition 50 bulletin boards located on the highways known as the 'River to River Road' and 'Transcontinental Thoroughfare.' The above bulletin boards are to be made on galvanized fronts, size 10x25 feet, and are to be erected in the best approved manner of bulletin construction, and are to be painted at least once a year as per sketch submitted and agreed upon. It is agreed that at any time of repaint the copy may be changed by the party of the second part (defendant) by giving notice thereof in writing 30 days in advance of the date of repaint, and that the party of the first part agrees to proceed immediately upon receipt of such notice in the preparation of sketches which are to be submitted and agreed upon before the repaints are started. For such service the party of the second part agrees to pay the party of the first part the aggregate sum of $3.75 per board per month, payable as per the clause of this contract relating to such subjects. In addition to the aforesaid mentioned bulletin boards, the said party of the first part agrees to paint for the aforesaid party of the second part 50 store walls aggregating approximately 40,000 square feet. These walls are to average about 800 square feet to the board, and are to be as free from obstructions and openings as possible, it being understood, however, owing to the physical architectural construction of the various buildings throughout the state, that plain walls would be few and scarce; but the party of the first part is to use reasonable judgment in the location of said walls. For the above-mentioned service of walls the

party of the second part is to pay the party of the first part, the aggregate sum of square feet so painted at 6c per square foot. It is understood, however, that the party of the first part does not guarantee the length of durability of these walls over a greater length of time than 12 months after a painting or repainting. The party of the first part agrees to repaint these walls at any time during the three-year period of the bulletin board described in preceding paragraph at the rate of 4c per square foot. It is further agreed by the party of the second part that, should he decide to repaint these walls, that he will employ the party of the first part to do his repainting. It is further agreed that the party of the first part shall make his space permits for a period of three years, so that, in case the party of the second part does not desire to repaint the aforesaid described walls, that the sign painted on said wall may be read as long as the elements permit the colors in said sign to remain distinct and visible to the eye. It is further agreed that the consideration mentioned in preceding paragraph will be made payable as follows: That the aggregated amount of bulletin rental for the period aforesaid mentioned shall be divided into 36 equal payments, which are to be paid monthly from the average date of erection of the aforesaid mentioned bulletin boards; however, it is further agreed that any payments which may become due before January 1, 1913, shall be divided equally into the remaining number of payments, and added to the regular payments due on said bulletin. It is further agreed that the rental of walls shall be divided into 18 equal payments, payable monthly from the average date of painting; however, it is further agreed that any payments may become due before January 1, 1913, shall be divided by the remaining number of payments, and the amount so obtained added to the regular monthly payments. It is further agreed that the length of this contract shall be three years from average date of erection of aforesaid mentioned bulletin boards, and that no cancellation of any of the terms of this contract can be made by

either party unless by the consent of the other in writing. The intent of this contract is that the party of the first part is to build and maintain 50 boards and to paint 50 walls at a price of $3.75 for the board, and 6c per square foot for the walls, based on the average date of completion of the various classes of bulletin advertising. The party of the second part agrees to the above contract and all its terms and conditions, and agrees to pay the aforesaid mentioned rentals promptly and without delay. The party of the first part agrees to execute the painting and building of the aforesaid mentioned boards and walls, in a thorough and first-class workmanlike manner.''

Plaintiff pleaded that it had fully complied with the terms of this agreement on its part; but that, after it had erected and painted the bulletins, and painted the requisite number of walls, defendant, without just cause or excuse, failed and refused to make all the payments called for by the contract, in that, after paying the first four monthly installments on the bulletin boards, that is to say, down to April 3, 1913, it notified plaintiff of its intention to quit making payments, or to further comply with its agreement; that thereupon, in order to minimize any loss it might suffer from defendant's breach of contract, it re-leased the said bulletin boards, on November 19, 1913, to the Marshall Oil Co., and it asked for the rental on these boards from April 3d to November 19, 1913, and also rental for the wall signs, from the time it painted them down to the time of trial. It also averred that it could not, by reletting the bulletin boards, obtain as much as defendant had agreed to pay therefor, and for the difference, amounting to $37.50 per month, for the life of the original contract, plaintiffs asked judgment as damages for breach of the contract. It also asked judgment for the rental of the wall signs, from the beginning down to the time of trial. A demurrer to this petition was overruled, and defendant excepted. Thereupon, defendant filed a long answer and counterclaim, from which we extract the following:

It averred that plaintiff did not perform the contract on its part. It also averred that it was in contemplation of the parties that the same design, or sketch, should be used in painting both the bulletin boards and the walls, but that plaintiff did not comply with this part of its agreement, in that it used a different and inferior sketch or design, in painting the walls, from what it used on the boards—a design which was not approved or agreed to by defendant; that it agreed to pay too much for the use of said boards, but the price for the walls was such as to induce it to enter into the contract, as a whole; and that plaintiff's failure to comply with its contract in painting the walls, amounted to a breach of the entire contract, and a failure on its part to perform; and that, for this reason, plaintiff is not entitled to recover. It also averred that, as a part of the contract, plaintiff was to secure at least three-year leases for the walls upon which the signs were to be painted, so that defendant might have the advantage of continuous signs, advertising its product; that plaintiff failed to procure such leases, but, on the contrary, secured the right to use the walls for short terms only; and that, with the expiration of these terms, the signs were to be obliterated, so that they were of no use or benefit to defendant. It also averred the re-leasing of the bulletin boards to the Marshall Oil Co., a competitor of defendant's, without its knowledge or consent, and claimed that this was a breach, on plaintiff's part, of the provisions of the contract. It also pleaded that the action was prematurely brought, and that, in no event, could plaintiff recover, until the expiration of the entire time of three years, covered by the contract. The counter-claims were based: (1) upon the charge that plaintiff represented that it had complied with the terms and conditions of the contract, on its part, and thereby induced defendant to pay it $778.24 in rentals for the bulletin boards, whereas, in truth and in fact, as it well knew, it had not complied with the terms of its agreement, and it asked to recover the payments made; (2) it alleged that it sold and

delivered to plaintiff, goods and merchandise to the amount of $718.92, for which it had not been paid, and for this amount, it asked judgment. This latter counterclaim was withdrawn by defendant, before the submission of the case to the jury. Upon these issues, the case went to trial, and was submitted to the jury upon instructions which were not excepted to by defendant. These instructions are not set out in the record, and all we have as to their contents is a statement made by the court, as follows:

"Gentlemen of the jury, during the interim this case has taken such a consideration that at the proper time I shall direct you to return a verdict for the rental of the bulletin boards from April 3, 1913, to November 19, 1913, for $1,787.62. I shall also direct you to return a verdict on the second count of plaintiff's petition for the damage on account of the re-rental at a lower price, of $816.93. The third matter which will be submitted for your determination arises wholly upon the question as to whether or not the plaintiff complied with his contract as to the painting of the wall signs. That is the only question that will be presented to you for your determination, and the only question that will be argued.

"Mr. Dyer: I think I will make my record of exceptions to the instructions. Defendant excepts to the instructed verdicts in the case just indicated by the court on Counts 1 and 2.

"Judge Miller: Yes, but let the record show that this statement by the court to the jury at this time was at the instance and request of the defendant's counsel.

"Court: Very well.

"Judge Miller: I want that in to show why the statement was made. It was made at the instance of the defendant's counsel."

During the course of the trial, the following colloquy occurred, between court and counsel:

"Judge Miller: I want to prove by this witness the

present worth of the sum of $842.50, being the difference between the amount for which the boards were sold to the Marshall Oil Company and the amount which would have been paid by the Manhattan Oil Company if it had carried out the contract, and I wish to prove by this witness the present worth of that sum.

"Mr. Dyer: The defendant will say this: If Mr. Brand will submit his figures, we no doubt will agree as to what that amount is, if it is an amount to go to the jury at all. So you do not need to take the time of the court and jury.

"Judge Miller: Will you admit, Mr. Dyer, that $816.93 represents the present worth of the amount which is asked for in the second count of the petition?

"Mr. Dyer: I admit that the computation is correct. I deny that it is proper element of damages in any respect. I make no objection to the sum, that is all. Otherwise I object to the testimony as being incompetent, irrelevant and immaterial and not the measure or the proper measure of damages.

"Court: I understand the only difference between you is the question of whether that is a proper element or measure of damages?

"Mr. Dyer: That is all. If his contention is correct, then that is the proper sum.

"Mr. Dyer: The defendant will admit that the interest charge of $73.32 is a correct computation of the interest as testified to by the witness, but defendant objects to the introduction of this sum as an interest charge for the reason that the plaintiff is not entitled to charge 6 per cent interest from May 30, 1913.

"The principal under the first count was $1,714.30. That is for the bulletin boards under the first count and it is not including the walls and $73.32 is a correct computation of the interest on said sum of $1,714.30, up to this date.

"Mr. Dyer: I admit the computation.

"Court: I think the contract is a divisible one, so that

there might be a recovery for the amount due for billboards and no recovery for the amount which is due for the wall signs. That was the point I was trying to make clear this morning.

"Mr. Dyer: Yes, sir.

"Court: Your suggestion was, as I understand it, that the contract was indivisible and although the billboards might have been satisfactorily painted, that they could not recover on the contract if that was the case.

"Court: Seems to me that this contract is very clearly a divisible contract. You will observe that the first five sections of this contract pertain exclusively to the bulletin board advertising. Now that comes to the amount of it, and payment of it. Now after they had disposed of that subject they take up the second subject 'In addition to the aforesaid mentioned bulletin boards the said party of the first part,' etc. The next clause provides for the manner of their selection (reading):

"Court: I think I will be justified in directing a verdict as to two of these points, but as to the third I think that should be submitted to the jury, that is as to whether or not these wall signs were painted as it was contemplated. If they find that they were, then the amount which is due is readily ascertained. It seems to me that is about the only issue that is left, Mr. Dyer, for this jury when I hold the contract is a divisible one. As I consider it, it is a divisible contract. That will be the ruling.

"Mr. Dyer: I shall endeavor to prepare an instruction that will help out on that matter."

We must assume, from the record and the verdict, that the jury found, under proper instructions, that the wall painting, and the leases for the walls, were in accord with the provisions of the contract, and the sole and only remaining question was whether or not defendant refused performance on its part. There is really no dispute in the testimony,

regarding this proposition. Plaintiff's witness testified to it directly, and none of defendants, or their witnesses, denied it.

II. Much is said in argument about the divisibility, or non-divisibility, of the contract in suit. The trial court was of opinion that it was divisible, and so treated it, during the trial. Had the jury found that the walls were not painted in accordance with terms of the contract, as agreed upon by the parties, the question of divisibility would be a vital one; for, if plaintiff had failed to perform an indivisible contract, he could not, under the pleadings, recover at all; whereas, if it were divisible, he might recover for defendant's failure to pay the rentals for the bulletin boards, subject to a counterclaim for nonperformance of that part of the contract relating to the wall signs. As the jury found that the walls were properly secured and painted, it is entirely immaterial whether the contract was divisible or indivisible.

1. CONTRACTS: construction: divisibility.

The only question on the real merits, then, is, Was there any error in the amount awarded to the plaintiff? It sued for rents already due at the time suit was commenced, both for the bulletin boards and the wall space, and also for the damages it suffered in being compelled to re-lease the boards to other parties, in order to save itself from loss, and this damage was computed at the present worth of the difference in rentals. It asked nothing but the rentals due for the wall signs, down to the time of the trial. No claim for loss of subsequent rentals was made. The verdict was for the total of these amounts. Assuming, as we must, that defendant repudiated its contract, and failed to perform its part of the agreement, the recovery was justified, under both the law and the evidence. *Richmond v. Dubuque & S. C. R. Co.,* 33 Iowa 422; *Cutter v. Gillette* (Mass.), 39 N. E. 1010; *James v. Kibler* (Va.), 26 S. E. 417.

2. DAMAGES: measure of damages: advertising contract: breach: re-leasing.

III. At the conclusion of plaintiff's testimony, defend-

ant moved for a directed verdict. This motion was over-
ruled, and defendant then proceeded to introduce its evidence,
but did not renew its motion, at the close of
all the testimony. In so doing, it waived the
error, if any, in the ruling on the original
motion. *Hanson v. Kline,* 136 Iowa 101. Of
course, it was still open to challenge the ver-
dict for want of evidence, by motion for a new trial; but, as
we have already intimated, such motion was without merit,
in view of the finding of the jury that plaintiff had complied
with all the terms of the contract.

3. APPEAL AND ER-
ROR: waiver of
error: motion
for directed
verdict: waiv-
er of ruling.

IV. Nothing remains to be considered, save some rulings
made during the course of the trial. As the instructions are
not set out, we must assume that they were correct, and that
they submitted the only real issues of fact in
the case. The demurrer was properly over-
ruled; for the petition, as amended, stated a
cause of action. One of the questions in the
case was: What was to be painted upon the
walls? It was agreed that a sketch should be agreed upon
for the bulletin boards, which was done, and it is contended
for the defendant that the same sketch was to be used in
painting walls, either by agreement, or in virtue of a clause
in the latter part of the agreement, in which the words ''bul-
letin advertising'' appear. Plaintiff contended that, as the
contract did not fix the matter, he took the precaution to
submit sketches to defendant's officers of what was to go on
these painted walls, and that these officers approved the
sketches. Plaintiff further says that, because of the size of
the various walls, and the difference in the openings therein,
it was impossible to use the same sketch on all the walls, and
that this matter was covered by agreement, when the sketches
were submitted. A direct issue was thus tendered, but the
trial court would not permit the defendant to show what was
meant by the term ''bulletin advertising.'' In this, we think
there was no error. That term had no reference to the design

4. CONTRACTS:
construction:
''bulletin adver-
tising:'' mean-
ing of term: evi-
dence.

which should be used upon the walls. The exact design to be used for wall painting was not stated, and it was necessary for the parties to agree upon it, or, in the absence of an agreement, it might be governed by some well-recognized general custom, or, doubtless, by parol agreement of the parties. The case was tried on the theory that plaintiff submitted sketches to defendant, which were approved by it, and, doubtless, the jury was properly instructed with reference to this issue. There was no error in denying defendant the right to show what was meant by the term "bulletin advertising," for that was not a term used as descriptive of what either party was obligated to perform. It was simply to fix the time when payment should begin. The term was either defined in what preceded, or it was not defined at all, and, if not defined, the obligation grew out of custom, or express agreement.

It is said, however, that the sketch which was submitted to defendant, and by it accepted, was not admissible in evidence, because not sufficiently identified. We think there was enough justifying its accuracy to permit its receipt in evidence, the accuracy thereof being for the jury. Proof was made that the original was destroyed, and the copy was made by the man who draughted the original, and he testified to its substantial accuracy.

5. EVIDENCE: best and secondary: copies: proof of accuracy.

As to alleged prejudicial remarks made by the court, it is enough to say that no exceptions were taken thereto by defendant's counsel.

6. APPEAL AND ERROR: review: prejudicial remarks of court: failure to except: effect.

Defendant's witnesses were not permitted to testify as to what the owners of the walls upon which signs were painted, said, regarding the matter of having given leases to the plaintiff. This was manifestly correct, as such testimony was clearly hearsay.

7. EVIDENCE: hearsay: making of leases.

Other complaints need not be noticed, as they involve no

new and doubtful questions. The various motions filed in the case are each and all overruled. An examination of the record leads to the conclusion that there is no reversible error, and the judgment must, therefore, be, and it is,—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.