SUSAN WILLIS, Appellee, v. PETER SCHERTZ, Appellant.

**HIGHWAYS: Duty of Guest to Exercise Care.** While a mere guest
1 must exercise care commensurate with the circumstances, and *might*, in the interest of safety, be under a duty to make suggestions to the driver, or otherwise interfere with the management of the vehicle, yet such guest is not, *per se*, bound to anticipate a violation of law, either on the part of another driver in keeping to the wrong side of the road, or on the part of her own driver in not sounding his horn. (Sec. 1571-m18, Code Supp., 1913.)

**TRIAL: Unsuccessful Motion for Directed Verdict—Nonwaiver.**
2 The sufficiency of the evidence to sustain the verdict may be raised (a) in requested instructions, or (b) in a motion for a new trial, even though the complaining party unsuccessfully moved for a directed verdict at the close of plaintiff's evidence, and did not repeat the motion at the close of all the evidence.

**TRIAL: Argument—Reading Extracts from Testimony.** Extracts
3 from the evidence of witnesses may be read to the jury.

**NEGLIGENCE: Pleading—Paraphrase by the Court.** A paraphrase
4 by the court, in its instructions, of the negligence pleaded, examined, and held to be within the pleadings.

**NEGLIGENCE: Contributory Negligence—Unusual Definition.** It is
5 not error to define contributory negligence as negligence which "helps" to produce an injury.

**TRIAL: Instructions—Exceptions.** An exception to an instruction
6 on the ground that "it is not a correct statement of the law" is wholly insufficient. (Sec. 3705-a, Code Supp., 1913.)

**DAMAGES: Permanent Injury—Life Tables Not Essential.** The
7 introduction of life tables is not essential to the recovery of damages for permanent injury.

**DAMAGES: Permanent Injury and Loss of Earning Capacity.** An
8 allegation of permanent injury, with claim for damages, is

sufficient basis, if proven, to warrant recovery for depreciation in earning capacity.

**DAMAGES:    Permanent Injuries and Mental and Physical Pain.**
9    Recovery may be had for mental and physical pain, under allegations of severe, permanent injury.

**NEW TRIAL:    Verdict—Excessiveness—$1,150.    Verdict for $1,150**
10    for personal injury held not excessive.

*Appeal from Calhoun District Court.—*E. G. ALBERT, *Judge.*

DECEMBER 16, 1919.

REHEARING DENIED MARCH 15, 1920.

ACTION for damages consequent upon the collision of automobiles resulted in a verdict for plaintiff and judgment thereon.    The defendant appeals.—*Affirmed.*

*E. C. Stevenson,* for appellant.

*Gray & Gray,* for appellee.

LADD, C. J.—I. At about two o'clock in the afternoon of May 19, 1918, Charles Kleen was driving an automobile in an easterly or northeasterly direction along the highway

1. HIGHWAYS:
duty of guest
to exercise
care.

between the Twin Lakes; and, after passing over the bridge which spans the stream flowing from one lake to the other, observed an automobile, operated by the defendant, approaching from the north, or northeast.    Hie Kleen, cousin of Charles, was sitting in the front seat with him, and with the plaintiff on her lap, both being his guests. No one was in the back seat.    The evidence was such that the jury might have found that there was a ditch along the side of the road, toward the south lake, and that Kleen drove as near as possible to it; but that the defendant, though driving in an opposite direction, kept on the left side of the highway, and, as there was ample room in the traveled

way for passage, might, by the exercise of reasonable vigilance, have swung his car to the right side of the traveled way, and have avoided the collision. There was a sign reading, "Slow Down," about 20 feet north or northeast of the bridge. Kleen testified that, upon noticing this, he slowed his car down until it was barely moving, but did not honk his horn; that the traveled way was about 20 feet wide; and that he did not see the defendant's car until it was about 30 feet from him. The defendant testified that he did not observe plaintiff's car until about 30 feet distant; that he had come around a short curve, and saw it in a bend of the road.

Enough of the facts have been recited to indicate that the defendant might have been found to have been negligent in failing to sound a warning of his approach around the curve, and in driving his car on the wrong side of the road, as he approached Kleen's automobile. Kleen's negligence, if such there was, might not be imputed to the plaintiff. Nevertheless, she must have exercised ordinary care, having due regard to her situation as guest of the driver. How far such a guest, in the exercise of ordinary care, is bound to go in suggesting or interfering with the management of the automobile, is often a delicate matter to determine, and necessarily depends on the particular situation. Even though approaching a curve in the traveled way, obscuring the approach of an automobile from the opposite direction, as seems likely to have occurred in this case, much depends on the speed at which the car is moving, and the control of the driver. While the guest may properly be held to the duty of keeping a lookout, she is not bound, as a matter of law, to anticipate that an approaching car from the opposite direction will violate the law of the road by keeping to the left side, nor, when the car is barely moving, that warning necessarily shall be sounded, even though that duty is exacted of the driver. Section 1571-m18, Code Sup-

plement, 1913.   Much depends upon the speed at which the
car is moving, and the nature of the highway.   Where a
car is moving slowly, or barely moving, as was said of
Kleen's car on the trial, a guest cannot be deemed conclu-
sively negligent in failing to suggest another precaution:
that of sounding a warning of its approach.   We are of
opinion that it was for the jury to say whether the plaintiff
was guilty of any want of care in sitting in another's lap, as
she was, or in failing to suggest to Kleen that his horn be
honked in nearing the curve.   The evidence was such as to
carry the issues to the jury.

II. Appellee contends that the sufficiency of the evi-
dence to support the verdict was not challenged.   At the
close of plaintiff's evidence, defendant moved that a verdict

**2. TRIAL: unsuc-**
**cessful motion**
**for directed ver-**
**dict: non-**
**waiver.**

be directed in his favor.   This motion was
overruled, and other testimony introduced.
In failing to renew the motion at the close
of all the evidence, the error in overruling
the first-named motion, if any, was waived.   The sufficiency
of the evidence, even then, might have been challenged by the
request of an instruction directing that the verdict be for
the defendant, or in a motion for new trial.   *Warren v. Gra-*
*ham,* 174 Iowa 162; *Stoner-McCray System v. Manhattan*
*Oil Co.,* 176 Iowa 630; *Hansen v. Hough,* 177 Iowa 93; *Hei-*
*man v. Felder,* 178 Iowa 740.   Such instruction was re-
quested, and the point also was raised in the motion for
new trial.

III. Objection was made to the reading to the jury by
counsel for the plaintiff of "Extracts from the Evidence of
Witnesses," and this was overruled by the court, with the

**3. TRIAL: argu-**
**ment: reading**
**extracts from**
**testimony.**

remark: "You may read the extracts from
the record if you have them."   The ruling
finds approval in *McConkie v. Babcock,* 101
Iowa 126.   There was no abuse of discre-
tion in permitting such extracts to be read.   The transpo-

sition of the names of the parties in one of the instructions could not have prejudiced either. *Reupke v. Stuhr & Son Grain Co.*, 126 Iowa 632.

IV. In the third paragraph of the charge, the court directed the jury that there were two grounds of negligence: (1) That defendant was driving his car on the wrong side of the road; and (2) that he was not "giving the care and attention to the operation of his automobile that an ordinary, careful, and prudent man would give under like circumstances." Exception was taken thereto, for that, it is said, the second ground was not included in the petition. Therein it is alleged that:

4. NEGLIGENCE: pleading: paraphrase by the court.

"The defendant carelessly, negligently, and without regard to the safety of those passing upon the highway, drove the car which he was in, in such a careless and negligent manner, and on the wrong side of the public highway, that the car that he was driving was run into the car the plaintiff was in, * * * throwing her out, knocking out her teeth, breaking her ribs, and causing her other and permanent injuries."

Plainly enough, this states two charges of negligence: i. e., that the defendant drove his automobile (1) in a careless and negligent manner, and (2) in a prohibited place, namely, on the wrong side of the highway; and, if he did either, resulting in plaintiff's injury, he was negligent. The petition might have been made more specific, but it was not assailed; and, if the defendant operated his car in a negligent manner, to plaintiff's injury, he was quite as liable as though this had resulted from keeping on the left side of the traveled way. There was no error in the instruction.

V. Exception was taken to this language, found in the seventh instruction:

"Contributory negligence is such negligence on the part

5. NEGLIGENCE:
contributory
negligence:
unusual defini-
tion.

of one injured as helps to produce the injuries complained of."

The precise objection to this language is not disclosed, and we are unable to appreciate the defect therein. Though not in the language ordinarily employed, it is such as might not have been misunderstood, especially in view of other instructions cautioning the jury that, in order to recover, plaintiff must have been without contributory negligence. There was no error.

VI. Ten exceptions were taken to the 23d instruction, which, in so far as criticised, reads:

"If you find, from a preponderance of the evidence, that the plaintiff is entitled to recover, then you will determine the amount of damages, if any, that she has sustained. In determining such damages, you should take into consideration the mental and physical pain, if any, suffered by the plaintiff, and occasioned by the injury complained of, her health and the condition thereof before the injury complained of, and the effect, if any, of said injury on her health; and, in case you find that the plaintiff has, to any extent, been permanently injured, you should take that into consideration in determining her damages. You cannot allow the plaintiff anything for loss of time from the time of the accident until she reaches the age of 18, and you cannot allow her for loss of time in any amount, unless you find that she has sustained a permanent injury from this accident, of such a character as will reasonably be expected to interfere with her work, and cause her to suffer loss of time after she has reached the age of 18 years; and, if she has established, by a preponderance of the evidence, a permanent injury of such a character as will interfere with her work after she reaches the age of 18, and cause her damage by loss of time, then such loss of time after she reaches the age of 18 years is an element that you should take into consideration in reaching your verdict. Another element

that you may consider, under this question of permanent injury, are the scar or scars on the person of the defendant which would tend to disfigure her and detract from her general appearance, if any such there are. Another matter that you may take into consideration, if proven, by a preponderance of the evidence, that it was caused by the accident in question, is the claimed interference with and irregularities of plaintiff's menstruation."

The first of the exceptions is that "it is not a correct statement of the law." This is not sufficiently definite to comply with Chapter 24 of the Acts of the Thirty-seventh General Assembly, exacting that "all such exceptions shall specify the part of the instructions as excepted to, or of the instructions asked and refused and objected to, and the grounds of such objections."

**6. TRIAL: instructions: exceptions.**

Exception b, that "there is no competent evidence of any permanent injury," is disproved by the evidence, without dispute, that the scar on the chin of plaintiff is permanent. Exception c is that no life table or evidence of expectancy was shown, and d, that no evidence was adduced upon which a finding of how long the plaintiff would live could be based. Such evidence was not necessary; for the introduction of life tables in evidence is not essential to the recovery of damages for permanent injuries. *Beems, Admr., v. Chicago, R. I. & P. R. Co.*, 67 Iowa 435. Plaintiff had not attained her majority; and the jury, in estimating the damages consequent on permanent injury, has taken into consideration her age, condition of health, the probable age of her parents (both of whom testified), and all other matters bearing upon the probable duration of her life.

**7. DAMAGES: permanent injury: life tables not essential.**

Exception e, that there was no evidence of any damages resulting from permanent injuries, is not well taken;

for, surely, damages were recoverable for causing the dis-
figurement of her chin.   Exception f was to
that part of the instruction telling the jury
"not to allow her for loss of time in any
amount, unless you find that she has sus-
tained permanent injury from the accident," and for that
there was no evidence of permanent injury to the plaintiff.
The objector evidently intended to say that there was no
permanent injury, such as would cause incapacity to labor
or earn money.   The jury might so have found.   On the
other hand, they might have accepted the testimony of plain-
tiff that she had been unable to work, up to the time of the
trial; that her back and side still pained her; and that she
was troubled with menstrual irregularities, and therefore
have concluded that she would not fully recover, prior to
reaching the age of 18.   No objection was raised to the in-
troduction of evidence of the wages received by plaintiff
prior to the injury.   Such proof was admissible only as
tending to establish probable loss in earning capacity after
she attained her majority.   Such evidence was admissible
on no other theory in the case; and, inasmuch as the defend-
ant raised no objection thereto, we might well conclude that,
as both treated the issue as to loss of time as involved in
the case, there was no error in submitting the same.   How-
ever, the petition did allege that the plaintiff was perma-
nently injured, and prayed for damages; and this was suffi-
cient to warrant recovery for depreciation in earning capac-
ity.   *Bailey v. City of Centerville*, 108 Iowa 20; *Camp v.
Chicago G. W. R. Co.*, 124 Iowa 238; *Scott v. O'Leary*, 157
Iowa 222.   Exceptions g and h have been disposed of by
what has been said.   Exception i relates to that portion of
the instruction relating to the irregularity of plaintiff's
menstruation, it being said that the record fails to show
that this was the result of the injuries.   The physicians

8. DAMAGES: per-
manent injury
and loss of
earning
capacity.

testified that such trouble might have resulted from the collision. Plaintiff swore that she had had no difficulty therein, previous to the injury, but that she had suffered from such irregularity since. No other cause having been shown, the jury might have found that the irregular menstruation was consequent on the injuries suffered.

The propriety of allowing the jury to "take into consideration the mental and physical pain, if any, suffered by plaintiff, and occasioned by the injury complained of," is

**9. DAMAGES: permanent injuries and mental and physical pain.**

challenged, for that the petition contained no allegation thereof. Such pain, however, is the natural and inevitable result of injuries such as alleged, and might be included, in measuring the damages, without specific reference thereto in the pleading. *Gronan v. Kukkuck*, 59 Iowa 18; *Ousley v. Hampe*, 128 Iowa 675; *Worez v. Des Moines C. R. Co.*, 175 Iowa 1. The language quoted is in the past tense, and does not authorize recovery for pain which may be suffered in the future.

Appellant contends that the verdict for $1,150 was excessive. The evidence was such as to preclude any interference with the finding of the jury. That several of her

**10. NEW TRIAL: verdict: excessiveness: $1,150.**

lower teeth were knocked loose, and one of them broken; that her lip was cut, and her shoulder bruised, was conclusively established. One of her physicians did not recall that the lip had been sewed; but the other, who examined her about a week later, thought it had been "repaired." The former examined her shortly before the trial, and thought her teeth solid, but stated that she complained of her chest, and menstrual periods. Both were of the opinion that irregularity in her menstrual periods might have resulted from the injury, and were agreed that there were many other causes for such difficulty. The physician exam-

ining her about a week after the injury found a slight bruise across her hips and a discoloration on her ribs. The other did not examine her person in these parts, and said she did not complain of such injuries. One physician, Myrtle Griffin, was of the opinion that "the mark on her hip will decrease, as time goes on. It will probably be there always, but it will get less, as it gets older. If her jawbone is not injured, and her teeth get proper treatment, I think they will be as sound and solid as they were before the accident. Her nervousness is apt to be caused by such an accident."

Plaintiff's mother testified that she complained all the time that her right side and back hurt her. Plaintiff thought some of her ribs were broken loose; but this was not discovered by either physician. She also swore that her hip still hurt her; that one tooth was "knocked off," and her teeth were sore and somewhat loose; and that the scar on her chin and arm were still sore; and that her arm "gets kind of numb sometimes;" that the scar on her chin is visible; and that her side pained her all the time; that she had been nervous, ever since the injury; and that her menstrual periods had been irregular since then; that she had been unable to work, since her injury. She also testified as to the amount she was earning prior thereto. The evidence that she was in an entirely healthy condition, prior to the injury, was uncontroverted. The jury, then, might have found that she was injured, as recited; that she suffered pain up until the time of the trial; that she was incapacitated, to a considerable extent, from earning money; and that she was permanently disfigured. We are not ready to say that the amount allowed was more than sufficient to compensate her for the injuries received.—*Affirmed.*

EVANS, PRESTON, and SALINGER, JJ., concur.