CHARLES F. BRADLEY, Appellee, v. INTERURBAN RAILWAY COMPANY, Appellant.

**NEGLIGENCE:** Contributory Negligence of Invited Guest. Whether an invited guest in an automobile over which he has no control is guilty of contributory negligence is peculiarly a jury question. Record held not to show such negligence as a matter of law.

**EVIDENCE:** Competency—Extent of Injuries. The opinion of medical experts who have treated or examined an injured party is admissible on the issues: (1) Whether the injuries are permanent; (2) whether the injured person will ever regain the normal use of his limb; or (3) whether the injured person will always walk with a limp.

**DAMAGES:** Loss of Promotion. Loss of seniority in service, and consequent loss of right of promotion, resulting from a personal injury, may be shown on the issue of damages.

**RAILROADS:** Accidents at Crossings—Gates and Watchmen. Testimony tending to show the daily operation of a large number of trains over a railway crossing is admissible on the issue whether reasonable care demanded the maintenance of gates or watchmen at such crossing. In instant case, a train sheet was held admissible.

**NEW TRIAL:** Verdict—Excessiveness—$10,000. Verdict of $10,000 for personal injury held not excessive.

*Appeal from Dallas District Court.*—H. S. DUGAN, Judge.

JUNE 25, 1921.

REHEARING DENIED OCTOBER 1, 1921.

ACTION at law, to recover damages for personal injury.
There was a trial to a jury, a verdict and judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*W. H. McHenry, Corwin R. Bennett,* and *White & Clarke,*
for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

WEAVER, J.—The plaintiff was injured in a collision between an automobile in which he was riding and one of the defendant's cars, upon a highway crossing in the city of Des
Moines. The circumstances under which the
collision occurred are not the subject of much
controversy. The plaintiff is a resident of
Perry, Iowa, and is by occupation a railway conductor upon the
Chicago, Milwaukee & St. Paul Railway. On the day in question, he had been called to Des Moines, to attend the funeral of
a brother. The funeral was appointed to be held at a chapel in
the main part of the city at 3 o'clock P. M. Plaintiff arrived in
the city in time to take the noon meal down town. Shortly after
noon, he accepted the invitation of his brother-in-law, one Wilson, to ride with him and one or two other relatives to the home
of the deceased, and thence to the funeral. The auto was owned
by Wilson and driven by him. It was well filled with members of
the family: all the seats appear to have been occupied. The
plaintiff sat on a small or "jump" seat behind the front seat in
which were the driver and another. In the rear seat were two
ladies. The course of the auto took the party west on New York
Avenue. The defendant's railway track crosses this avenue
diagonally between Fourth and Sixth Streets; and, as the Wilson party approached from the east and undertook to make this
crossing, the defendant's train or car, moving from the northwest, arrived at what is alleged to have been an excessively high
and negligent rate of speed, and came into collision with the
auto, throwing it from the track. In that collision, the plaintiff
was very seriously injured. The weather, at the time of the
accident, was rainy or misty, and the curtains of the car were
down. The street at this point is one upon which there is much

1. NEGLIGENCE:
contributory
negligence of
invited guest.

traffic, and the defendant railway company was at that time operating 56 daily trains over the crossing. That the view of the tracks by persons using the highway from the east was more or less obscured by buildings and other obstructions is the claim of the plaintiff and his witnesses; but this is denied by the appellant. The alleged negligence charged by plaintiff to the defendant is as follows: (1) The defendant's car was running too fast, and was not under control; (2) no signal or warning was given of its approach to the crossing; and (3) no gates or flagmen were maintained at the crossing.

The defendant specifically denies each of the several allegations of negligence, and avers that plaintiff himself was guilty of negligence barring his recovery of damages. The trial court submitted the case to the jury on each of the issues presented by the pleadings, and a verdict was returned for the plaintiff in the sum of $10,000. From the judgment entered on such verdict this appeal has been taken.

I. The first and most earnestly argued proposition in support of the appeal is that the plaintiff should be held chargeable with contributory negligence as a matter of law. The argument, stated briefly, follows along this line: First, that, although plaintiff was an invited passenger or guest in a car of which he had neither ownership nor control, yet he was still bound to exercise reasonable care for his own safety; and second, that reasonable care required him, as a matter of law, to observe the crossing to discover if a car was approaching on defendant's track, and if there was one, it was further his duty, as a matter of law, to give the alarm to the driver, and cause him, if possible, to stop until the danger had passed; and that, failing so to do, he cannot recover.

With the first proposition, that the invited guest or passenger is not absolved from his obligation to use reasonable care for his own safety, there is no room for dispute; but this is as far as the court can keep step with counsel. The leap from the statement of duty of reasonable care for one's own safety to the conclusion, as a matter of law, that the invited guest is negligent if he fails to see an impending danger in time to interfere and prevent it, is entirely too far. The question as to what is reasonable care in such an emergency is peculiarly a question

for the jury. Within reasonable limits, the invited passenger in an automobile may reasonably and lawfully rely on the skill and judgment of the driver. He cannot physically interfere with the driver's control of the car, without peril of disaster. He may, under proper circumstances, sound an alarm, if he sees danger ahead of which the driver seems oblivious; but even then he must still, to some extent, place his reliance upon the driver to avoid it. There is no rule of law which obliges him to forcibly seize the steering wheel and wrest it from the hands of the owner, or to jump from the rapidly moving vehicle to certain injury or death. The appearance of danger of this character in almost every case comes in an instant of time; the peril is immediate, imminent; and, if a collision occurs, the destruction is accomplished in a twinkling. The evidence in this case shows that the plaintiff had no acquaintance with the crossing or its surroundings, and did not know of its existence until just as the car reached the track; that he was riding in the middle of the car, his view to the front being necessarily obscured by the driver and another person sitting in front. He did discover the crossing as he approached it closely, and almost simultaneously caught sight of defendant's car, and immediately gave an outcry. The driver appears to have also seen the danger at the same moment, but was unable to stop the auto. The plaintiff, a practical railroad man, says that defendant's car swept around the curve and over the crossing at a rate of 35 miles an hour, and in this he is corroborated by others; and, while appellant's counsel contend flatly that the crossing and its approach were clear, open, and unobstructed to the view of persons approaching from the east, the evidence is ample to support a finding by the jury that at this point defendant's line swings in a curve to the northwest, and that the view to the westbound traveler on the street is materially obscured by various structures, until he reaches the tracks or enters thereon. Counsel would avoid the effect of this evidence by saying that it is false. This, *the court* cannot do; and, unless we are to hold that all rules of law which have been supposed to afford some sort of protection to the public in the use of its own streets have been abrogated, we cannot say that a person injured under the circumstances here disclosed is to be charged with contributory negligence, as a matter of law. See *Withey v.*

*Fowler Co.*, 164 Iowa 377; *Glanville v. Chicago, R. I. & P. R. Co.*, 190 Iowa 174; *Marnan v. Chicago, R. I. & P. R. Co.*, 156 Iowa 457; *Lundien v. Fort Dodge, D. M. & S.·R. Co.*, 166 Iowa 85; *Willfong v. Omaha & St. L. R. Co.*, 116 Iowa 548; *Lawrence v. City of Sioux City*, 172 Iowa 320; *Willis v. Schertz*, 188 Iowa 712; *Nesbit v. Town of Garner*, 75 Iowa 314; *Wagner v. Kloster*, 188 Iowa 174.

II.   Exceptions are taken and errors assigned upon the admission of testimony by medical and surgical experts who had treated or examined the plaintiff, expressing the opinion that

2. EVIDENCE: competency: extent of injuries.

his injuries were permanent; that he would never regain the normal use of his injured foot and ankle; would always walk with a limp; and other matters of the same general nature.   It is argued that this testimony offends against the rule which we have frequently applied, that the expert witness may not be allowed to express an opinion in effect determining the ultimate question which the jury is impaneled to try.   *Kirby v. Chicago, R. I. & P. R. Co.*, 173 Iowa 144.   But we think the rule has no proper application here.   The witnesses were not asked, and expressed no opinion, as to whether the defendant was negligent in respect to any of the matters alleged in the pleadings, or whether the plaintiff himself was negligent in any respect, or whether his injuries, if any, were caused by any act or omission on the part of the defendant.   In cases of this character, where damages are sought for personal injuries, it is always admissible to show by expert evidence the nature and extent of such injuries, whether permanent or otherwise, and the manner and extent to which his injured or crippled condition, if any, affects his ability to labor or to make use of his normal physical powers.   The testimony of which the appellant complains at this point was, therefore, prop-· erly admitted, and the court did not err in overruling the objections made thereto.

III.   Exception is further taken to plaintiff's testimony that, in the line of service in which he was employed at the time of his injury, promotion and advancement are obtained by senior-

3. DAMAGES: loss of promotion.

ity; and that, by reason of his injury, interrupting such service, he had lost rank in that respect, and, even if he should become able to return to

his accustomed occupation, he could not hope to regain the advantage to which seniority would otherwise have entitled him.

He also testified that, during the time he had been so disabled, the schedule of compensation for railway conductors of his class had "gone up." No good reason appears for excluding such testimony. The chances of an employee for promotion in the service in which he is engaged, together with proof of the wages he was then receiving, and of his prospects for advancement, had he not been injured, are universally recognized as proper subjects of inquiry in determining what loss, if any, he had sustained by reason of his disabled condition.

IV. The plaintiff offered in evidence the defendant's train sheet, showing the number of trains it was operating over its track at this crossing on the date of the accident. The evident

**4. RAILROADS: accidents at crossings: gates and watchmen.** purpose of this offer, as well as of other testimony tending to show the amount of traffic on the railway and on the street at this crossing, was for its bearing upon the reasonable necessity, if any, for protecting such crossing by the maintenance of gates or watchmen to prevent accidents like the one now under consideration. For this purpose we hold the testimony material and competent, and the assignment of error thereon cannot be sustained. The question whether such protection was reasonably required at this crossing was one of fact for the jury. The crossing was in a large city over a street of importance, and much used, as is also the defendant's railway. The angle at which the crossing is made is quite acute, and altogether the situation is such that the question of whether reasonable care, under the circumstances, would require the use of gates or the employment of watchmen, is not one which can be disposed of by the court, as a matter of law. There was no error in submitting the issue to the jury, or in admitting the testimony bearing thereon. See *Slaats v. Chicago G. W. R. Co.*, 110 Iowa 202; *Merchants T. & S. Co. v. Chicago, R. I. & P. R. Co.*, 170 Iowa 378, 385; *Pratt v. Chicago, R. I. & P. R. Co.*, 107 Iowa 287; *Annaker v. Chicago, R. I. & P. R. Co.*, 81 Iowa 267; 3 Elliott on Railroads (2d Ed.), Section 1157.

V. The general claim is made that there is no evidence on which the defendant can be properly found to have been negli-

gent. Such is not our view of the record. The evidence is sufficient to carry that question to the jury on each of the charges set forth in the petition.

Complaint is also made that the verdict of $10,000 is excessive. Plaintiff, when injured, was 46 years old, with a life expectancy of substantially 20 years. His life employment had

5. NEW TRIAL: verdict: excessiveness: $10,000.

been in the railway service, and he was then earning $225 per month. His injuries appear to have been of a serious character, incapacitating him from re-entering the work in which he had been engaged and trained. His heel was crushed, necessitating the removal of a large part of the bone in his heel, and destroying the tendon of Achilles. He submitted to three several surgical operations, and suffered much pain. At the time of the trial, he had been disabled for 17 months. It does not appear that, in his crippled condition, there is any gainful occupation in which he can earn a living. He has been put to hospital expenses to the amount of $200, and the further sum of $1,000 for surgical aid. Considering all these things, even if we were to deny his right to compensation for pain and suffering (which, of course, we cannot do), a verdict of $10,000 is surely not so extravagant as to suggest passion or prejudice on part of the jury; and we cannot assume to interfere with their finding.

There is no reversible error in the record, and the judgment of the district court is—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.