LA VAE BALLARD, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**RAILROADS:** Accidents at Crossing—Negligence Per Se. An experienced driver of an automobile is guilty of negligence *per se* when,

on a clear day, with knowledge that a train is then due, he, without any diverting circumstance other than the misunderstood effort of a stranger to give a warning signal, and at a speed of 15 miles per hour, approaches and enters upon a railroad crossing with which he is perfectly familiar, knowing that, from a point 70 feet from the crossing, his unobstructed view would enlarge from 300 feet to one mile down the track, and takes no precaution except to look for a train at the 70-foot point, and *thereafter to listen.*

*Appeal from Polk District Court.*—JOHN D. WALLINGFORD, Judge.

JANUARY 10, 1922.

REHEARING DENIED APRIL 8, 1922.

ACTION to recover damages on account of personal injuries sustained by plaintiff by a collision of her automobile with a passenger train of defendant railway company. On motion of defendant the trial court directed a verdict on its behalf and entered judgment for costs against the plaintiff. Plaintiff appeals.—*Affirmed.*

*Thos. A. Cheshire,* for appellant.

*J. G. Gamble* and *R. L. Read,* for appellee.

DE GRAFF, J.—This is a grade crossing case and the appeal involves the correctness of the ruling of the trial court in directing a verdict at the close of plaintiff's testimony in favor of the defendant railway company on the ground of the contributory negligence of plaintiff.

The accident occurred August 16, 1920 at the intersection of Walnut Street and the defendant's main line of railway in the village of Elkhart, Polk County, Iowa. Walnut Street is an east and west street, and in fact is a continuation of a country highway. The place of the accident was about two blocks south of the business section of the town. The line of the defendant railway through Elkhart is nearly due north and south. The railway right of way is 100 feet wide with the main line track in the center thereof. Walnut Street is a broad, smooth, level highway and at the time of the accident was in good condition. The surrounding country is uniformly level.

Plaintiff accompanied by her husband was driving a Ford car east on Walnut Street on a return trip from Des Moines to her home in Elkhart.

There was a field of growing corn along the south side of the Walnut Street road extending west from the right of way about 300 feet. This corn was high enough to obstruct a view toward the south of a traveler going east on the highway until he reached a point approximately 70 feet west of the tracks. From this point a person could see along the tracks toward the south for a distance of 300 feet. At a point 50 feet west of the center of the main line track, or on the west edge on the right of way, there is and was an unobstructed view toward the south for a distance of a mile or more.

Plaintiff, a married woman 24 years of age, resided with her husband in Elkhart. She was the owner of the Ford car and was an experienced driver having driven this car about 8 months. She had driven over this particular crossing many times, and was quite familiar with the surroundings. She knew that her view was obstructed to the south by the cornfield, west of the 70-foot point, and she knew she could see for a long distance with no obstruction to her view whatsoever after she reached the point 50 feet west of the tracks. She so testified. She also knew about the time the train was due and "knew it was about train time." The train was a scheduled daily passenger train due in Elkhart from the south at 2:45 P. M.

It is undisputed that the automobile was being driven by plaintiff at from 10 to 15 miles per hour in approaching the railroad crossing, and that for a considerable distance before reaching the crossing the speed of the car was not changed. In the judgment of plaintiff's husband the car could be stopped at that speed "within 10 to 15 feet." But one witness, a Mr. Hutton, was in a position to judge of the speed of the train, and he states that it was moving 30 miles an hour. Plaintiff in her original petition alleged that the train was moving 30 miles an hour, but in her substituted petition she recites the rate of speed at 40 miles. Her estimate of speed is based on a mere glimpse that she had of the train coming towards her immediately before it struck her automobile. She "imagines it was going 40 miles an hour," and admits she does not know how fast the

train was moving.   Plaintiff's husband in a written statement
over his signature given to the claim department of the railway
company prior to the commencement of the action states that
the speed of the train was 30 miles an hour.

A farmer by the name of Hutton was approaching the cross-
ing traveling west on Walnut Street immediately prior to the
accident.   He was driving a team and wagon and was sitting
on top of the wagon box.   When he was about 75 to 100 feet
east of the tracks he saw and heard the approaching train and
stopped his team.   He also saw the automobile driven by the
plaintiff approaching from the west.   He attempted to warn
plaintiff by waving his hands.   Both plaintiff and her husband
saw Hutton but neither understood that they were being warned.
Plaintiff testifies that Hutton had his hands up gesturing, and
that he was looking toward the south.

"I watched him up to the time my attention was diverted
by the train.   I kept my eye on him a few seconds.   During the
time I was watching Mr. Hutton I was listening for trains.   I
did not take what he was doing as a warning in any way.   His
hands were just moving like he was talking to someone and I
thought he was talking to someone.   I could not see anyone there.
I tried to but could not.   I did not give any particular attention
to what he was doing as a warning and did not give much atten-
tion to what he was doing at all."

When plaintiff reached a point approximately 70 feet west
of the tracks she looked toward the south and could see along
the tracks for a distance of 300 feet.   She knew her view was
obstructed to the south by the cornfield and that she could see
for a long distance with no obstruction to her view after she
reached the point about 50 feet west of the center of the track.
She commenced to listen for signals when the automobile was
200 or 300 feet from the crossing.   When she reached a point
68 to 70 feet west of the track she looked to the south and she
could see for 300 feet along the rails.

"From the point approximately 48 to 50 feet from the center
of the west track there is no obstruction to the view south ex-
cept a few telephone poles and they would not have prevented
me from seeing down the track.   If I had looked I could have

seen somewhere near a mile down the track after coming on the right of way.''

Both plaintiff and her husband state that they proceeded east at the same rate of speed (10 to 15 miles an hour) after passing the point 68 to 70 feet west of the tracks. They did not look again until they were practically on the tracks and when the train was about 25 feet from them.

All the testimony in this case was offered and introduced by plaintiff's own witnesses. Under these facts and circumstances is plaintiff guilty of contributory negligence as a matter of law?

It is quite apparent that the train was in plain view of the plaintiff for a sufficient length of time before the collision to have allowed her to realize its presence and to avoid the danger. The accident occurred in broad daylight. Clearly it was the duty of the plaintiff before attempting to cross this dangerous intersection to exercise reasonable care and prudence, and reasonable care involves the act of looking as well as listening. It is unmistakably shown that the view when she entered the zone of danger was unobstructed. The plaintiff had an intimate acquaintance with her surroundings. She knew how far she could see to the south on approaching the crossing and she knew the distance from the crossing when her view became unobstructed. No failure on the part of the railroad company to do its duty, if it so fails, will excuse a person from using his senses of sight and hearing upon approaching a railway crossing, especially so when the due use of either sense would have enabled him to avoid the danger.

The precautions of the traveler should be reasonable, and this means such precautions as a reasonable person would exercise under the circumstances. Every dictate of prudence required the plaintiff to continue to be vigilant when she was approaching the crossing knowing at that time that the train was about due, and also knowing that by looking she could see an approaching train, if one was approaching. Had she looked within the 50-foot zone she would have seen the train because the train was there. She had the right to expect that the law requiring signals would be obeyed by the train crew, but this is

not a substitute for the duty of exercising ordinary care for herself and her passengers.

Both plaintiff and her husband testified that when the automobile reached a point 68 to 70 feet west of the track they could see for 300 feet along the rails, and that both claimed to have looked to the south at this point. They did not look again. Giving the plaintiff the benefit of minimum speed of her car at 10 miles an hour and placing the maximum speed of the train at 40 miles, which is not warranted by the evidence, the mathematics of the case show that when the automobile was 70 feet from the tracks the train was 280 feet south of the crossing. She admitted she could see 300 feet south at a point 68 to 70 feet west of the track.

The facts of this case bring it within the rule announced in many of our prior decisions. See *Reynolds v. Hines,* 192 Iowa 530, with cases cited; *Williams v. Chicago, M. & St. P. R. Co.,* 139 Iowa 552. See, also, *Askey v. Chicago, B. & Q. R. Co.,* 101 Neb. 266 (162 N. W. 647).

Furthermore there was no diverting circumstance which excused the plaintiff's negligence. She was not paying proper attention to her surroundings. She was looking at Hutton on the wagon through idle curiosity. It was not a circumstance that reasonably excused the exercise of continued vigilance on her part. There was nothing in the event that would fairly lead a reasonably prudent person to omit further precautions in approaching a railway crossing under the circumstances of the instant case.

It may not be said that a traveler on a highway approaching a zone of danger can give attention to something without any particular reason for so doing, and thereby fail to exercise his natural senses for his own protection.

In *Richards v. Chicago, St. P. & K. C. R. Co.,* 81 Iowa 426 the plaintiff was in danger from a train, and a bystander attempted to warn him. Plaintiff watched the bystander and wondered what was the matter with him, but did not consider that his actions had any personal application to plaintiff or were intended as a warning. It was held that this was not a diverting circumstance. This is true in the instant case. Plaintiff did not consider that Hutton was attempting to attract her

attention. She paid little or no attention to what he did. Her primary duty in approaching a grade crossing was to exercise her senses in a reasonable way for her own protection. This is an unfortunate accident, but automobile drivers are not permitted under such circumstances to jeopardize their own safety, and the safety not only of their passengers, but also the passengers on the train, and later plead, "I was thinking about something else and did not look." See, *Landis v. Inter-Urban R. Co.,* 166 Iowa 20; *Reynolds v. Inter-Urban R. Co.,* 191 Iowa 589.

We are slow to invade the province of the jury in cases of this character, but a careful review of the evidence offered on behalf of plaintiff clearly warranted the trial court in directing a verdict in favor of the defendant company. The judgment entered is therefore—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.