MAE MCFARLAND, Appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

**RAILROADS:** Negligence—Omission of Statutory Signals. The omis-
1 sion of statutory signals becomes quite immaterial when it appears that there was no causal relation between such omission and the injury in question.

**RAILROADS:** Contributory Negligence—Unobstructed View of Track.
2 A traveler, in approaching and going upon a railway crossing with which he is perfectly familiar, is guilty of contributory negligence when, with no diverting circumstance, he fails to utilize a practically unobstructed view of 1,000 feet of the track, and thereby discover the presence of an approaching train.

WEAVER, J., dissents to the discussion in the instant case.

*Appeal from Buena Vista District Court.*—JAMES DE LAND, Judge.

MAY 2, 1922.

ACTION to recover damages for personal injuries sustained in an accident near a railroad crossing. The opinion states the facts. At the close of plaintiff's evidence the court directed a verdict for the railroad company and upon this verdict a judgment was entered against plaintiff for costs. Plaintiff appeals.—*Affirmed*.

*Kelleher & Mitchell,* for appellant.

*Helsell & Helsell* and *Thomas H. Chapman,* for appellee.

DE GRAFF, J.—This is a "near" railroad crossing accident. There was no collision. The defendant railroad has a line of

road running slightly north and west from the town of Fonda

1. Railroads: neg-
ligence: omission
of statutory
signals.

to Newell. The plaintiff on May 15, 1915 was driving eastwardly from the town of Newell along the Hawkeye Highway which parallels the railroad right of way and crosses the railroad tracks at a point a little more than a mile east of Newell. Plaintiff was riding in a single-seated covered buggy drawn by a horse which was driven by her husband. The top and side curtains were on. Plaintiff sat on the north or left-hand side and her husband on the south or right-hand side. These people had driven to Newell about 8 o'clock on the evening in question and remained there about two hours. The night was dark.

Plaintiff lived two miles east of Newell. She had traveled the highway about once a week for 35 years and was intimately acquainted with the surroundings. The railroad track is from 12 to 15 feet above the surrounding farm land, and the highway has a sloping grade to that level in order to cross the track.

They had safely crossed the railroad track. Very shortly thereafter the freight train passed, and the horse became frightened, ran away and overturned the buggy whereby plaintiff was injured.

This case is not within the rules applicable to the so-called "crossing cases." Plaintiff was on a public highway in a carriage driven by her husband as she had a right to be, permitting him to drive the vehicle as a good wife is ordinarily justified in doing. The horse and buggy had safely made the crossing. There was no collision with the train. The proximity to the crossing may have increased the likelihood of the horse to become frightened, but it is a matter of familiar observation that there are hundreds of miles of main line railway tracks paralleling public highways and it is possible that a nervous horse traveling thereon become frightened and unmanageable by reason of an on-coming train. Such was the environment in the instant case. Suppose as they approached the crossing they had observed the train and had stopped on the supposedly safe side to permit it to pass. They would necessarily have been "near" the crossing. Let us suppose that the horse was frightened and ran away. The difficulty in the case at bar is that even though

the alleged negligence charged by plaintiff did exist, such negligence cannot be said to be the proximate cause of the injury and the damages predicated thereon. The ringing of the bell or the blowing of the whistle (concerning which failure plaintiff alleges to have been negligence on the part of the defendant) might have been the cause of more fright on the part of the 13-year old horse which was being driven at the time in question

This case is governed by *Carrigan v. Minneapolis & St. L. R. Co.* 171 Iowa 723. The driver of a carriage in that case had stopped "near" the crossing when her horse ran away and threw her out upon the track where she was killed by a moving train. This court held for the defendant on the ground that no negligence proximate to the injury was established. It is true that when a horse is frightened in the proximity of a crossing a duty is cast upon the trainmen with reference to such fact, but this is not the instant case. If a person approaches a crossing with the observance of due care the fact that the horse becomes frightened does not necessarily convert the case into one of negligence on the part of the railroad. When the fright is apparent and danger threatens, due care must be used by the train crew to avoid the threatened danger, but this case does not involve the doctrine of the "last clear chance."

But even though it is conceded that the evidence in this case makes out a case for the jury on the negligence of the defendant the testimony offered is conclusive against the plaintiff on the question of contributory negligence. No evidence was introduced by the defendant. Plaintiff herself testified:

2. RAILROADS: contributory negligence: unobstructed view of track.

"The only thing between a person on the highway and the track is this small tree in the extreme east end of Mr. Swensen's lot, and the only thing, in the 1,000 feet that you go, after passing the Swensen buildings between you and the track until you reach the railroad crossing, is this willow tree."

Plaintiff claims to have first looked west when passing the Swensen place which is more than 1,000 feet from the crossing. This is the only place where the view is obstructed. She next looked about half way between the bridge and the crossing. The

bridge is a little closer to the railroad crossing than to the
Swensen place. The view at this point is unobstructed for more
than a quarter of a mile west. The greater part of the highway
is about two rods wide. When about 120 feet from the crossing
plaintiff looked to the east and at that time heard a train some
6 or 7 miles to the east.

"I appreciated that it must have been 6 miles away. I
was not at all alarmed about being run over by that train to
the east."

She further testified:

"The first time I saw the train from the west (the one that
frightened the horse) was when it was within 30 or 40 feet from
us. It was running all that time on a track that was 5 or 6
feet higher than the road we were on. After you pass the wil-
low tree 1,000 feet back there were no buildings or obstructions
between the road and the railroad track. The first time we saw
the train it was 40 or 50 feet from the crossing. I hadn't seen
it at all before that. It came down from the west across the
stretch of track 1,000 feet after it got past these trees, but I
didn't see it until it got between 40 or 50 feet of the crossing.
We were about a rod from the crossing at that time. If the
Swensen house is 1,050 feet from the crossing then the east
tree (the lone willow tree) isn't closer to the crossing than 1,000
feet."

Other witnesses testified to the accident. Henry Heilig
crossed the tracks about 300 or 400 feet ahead of plaintiff and
her husband. He testified:

"They ought to have been about to the bridge about the
time I got to the track. The bridge is a little closer to the rail-
road crossing than to the Swensen place. There is no obstruc-
tion to the view between the road and the railroad as you drive
east from the Swensen house after you pass the Swensen grove
1,000 feet from the crossing except a little further down there
is a tree, just one lone tree."

A plat was introduced in evidence which shows that this
tree is 650 feet from the crossing. Heilig saw the train coming
from the west when he was 40 to 50 rods from the crossing.

Another witness Peter Hensen was on foot at the time and crossed immediately after the McFarlands. He testified:

"I noticed the train coming along from the west. Any time you came within 20 rods of this crossing you could look back and see a train three quarters of a mile away. I saw the train 30 rods before I got to the railroad crossing."

The record also shows that the locomotive on this train carried a strong headlight. Heilig also testified:

"I saw the train coming from the west 40 or 45 rods from the crossing and I could see it at all times from that point until I got across the crossing and so could anyone else that was coming along the road. You could at that time see the headlight practically all the way from Newell, even when it was back of those trees. You could see a train all the distance clear up to the crossing on the track from any point on the Hawkeye Highway after you got past the Swensen house."

The trees back of the house are shown to be 1,040 feet from the crossing. At a point about 500 feet from the crossing there is an unobstructed view westward along the tracks for a distance of 1,398 feet.

A traveler on the highway knowing that he is about to cross a railroad track must look, when by looking he can see, and listen, when by listening he can hear. If without reasonable excuse he fails to exercise such precautions no recovery can be had for resulting injuries. This court has so frequently passed on the point in issue and the material facts not being in dispute the citation of our prior holdings under somewhat similar facts is sufficient to dispose of the matter in controversy. See *Pence v. Chicago, R. I. & P. R. Co.* 63 Iowa 746; *Anderson v. Dickinson,* 187 Iowa 572; *Waters v. Chicago, M. & St. P. R. Co.* 189 Iowa 1097; *Sackett v. Chicago G. W. R. Co.* 187 Iowa 994; *Barrett v. Chicago, M. & St. P. R. Co.* 190 Iowa 509; *Beemer v. Chicago, R. I. & P. R. Co.* 181 Iowa 642; *Crawford v. Chicago G. W. R. Co.* 109 Iowa 433; *Landis v. Inter-Urban R. Co.* 166 Iowa 20; *Swearingen v. United States Railroad Adm.* 191 Iowa 1096; *Sohl v. Chicago, R. I. & P. R. Co.* 183 Iowa 616; *Ballard v. Chicago, R. I. & P. R. Co.* 193 Iowa 672.

We do not hold that it was plaintiff's duty to look at any

particular time or place but she was under a continuing obligation to exercise due care and be vigilant. There is no uncertainty about the testimony in the case at bar. It is clearly and convincingly shown and without contradiction that the view of the plaintiff to the west was wholly unobstructed for a distance of 1,000 feet except for a lone willow tree which was 650 feet from the crossing. There was no diverting circumstance. A train six miles away which she appreciated was that far away, and which caused her no alarm cannot be considered as a diverting circumstance. Plaintiff was thoroughly acquainted with her environment and the facts prove conclusively that had she looked she would have seen the train. The ruling of the trial court on either theory is clearly correct, and the judgment entered is—*Affirmed.*

STEVENS, C. J., PRESTON and ARTHUR, JJ., concur.

WEAVER, J. (specially concurring). I concur in the result, on the authority of *Carrigan v. Minneapolis & St. L. R. Co.*, 171 Iowa 723, cited in the opinion, but dissent from the discussion upon the question of contributory negligence.