CLARA V. GLANVILLE, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Contributory Negligence—
1 "Reasonably Prudent Person" Rule. Record reviewed, and held that the court could *not* say, as a matter of law, that an injured person did not, in approaching a railway crossing, act as an ordinarily prudent person would have done.

**RAILROADS:** Accidents at Crossings—Ordinance—Application. An or-
2 dinance prohibiting a named rate of speed "within the platted part of the town where tracks are not fenced" applies to an unfenced public crossing.

**RAILROADS:** Accidents at Crossings—Failure to Blow Whistle. Fail-
3 ure to blow the engine whistle at a public town crossing may constitute negligence, even though such signal is not required by statute.

**DAMAGES:** Loss of Time of Housewife. Principle reaffirmed that, in
4 laying a foundation for a recovery of damages for loss of time or

value of services of a housewife, the best that can be done is to prove the facts and circumstances of the woman's life and services, and her age, health, strength, and expectancy of life.

**HUSBAND AND WIFE:**  Injury of Wife—Damages—Loss of Time.  A housewife who is without any independent calling or business may recover for loss of time resulting from a wrongful injury inflicted upon her.

**NEW TRIAL:**  Verdict—Excessiveness—$10,500.  Verdict for $10,500 for personal injury to a housewife reviewed, and held excessive, and conditionally reduced to $8,000.

*Appeal from Wayne District Court.*—H. K. EVANS, Judge.

MAY 15, 1923.

REHEARING DENIED SEPTEMBER 28, 1923.

ACTION for damages resulting from a collision of an auto with a freight train.  Verdict for plaintiff in the sum of $10,500, and judgment entered.  Defendant appeals.—*Affirmed on condition.*

*J. G. Gamble, A. B. Howland,* and *C. W. Steele,* for appellant.

*Carter & Bracewell,* for appellee.

DE GRAFF, J.—I.  A Ford car in which plaintiff was riding collided with a freight train of the defendant at the Mill Street crossing in the town of Lineville, Iowa on the afternoon of October 13, 1917.

Plaintiff seeks in this action to recover damages for the injuries sustained by her.  This is the second trial.  On a former appeal to this court the judgment was reversed.  *Glanville v. Chicago, R. I. & P. R. Co.* 190 Iowa 174.

We deem it unnecessary on this appeal to review the evidence except as it may be necessary to make answer to the propositions advanced by appellant.  These primarily involve

certain instructions given by the trial court.

1. RAILROADS: ac-
cidents at cross-
ings: contribu-
tory negligence:
"reasonably
prudent person"
rule.

Appellant renews the question of contributory negligence of plaintiff. On the former appeal it was held that this question was properly submitted to the jury which became the law of the case on the retrial. Unless it may be said that the evidence bearing upon this proposition is substantially different from the record on the former trial we will adhere to the prior holding in this particular.

There is no essential difference. The former opinion inadvertently recited that a sack of potatoes with other vegetables was back of the front seat of the car whereas the potatoes were "put in the front of the front seat of the car." This is an immaterial matter as bearing on the negligence of the plaintiff in failing to discover the approaching train in time to give warning to the driver to avert the injury. The evidence in the instant case described with more particularity the location of the vegetables in the car.

Plaintiff was riding on the left side of the rear seat and was clad in a heavy winter coat. The curtains were in use on the car. She had no lookout except through the glazed opening on each side and in the rear of the curtains. In looking through the opening on the left side she was compelled to lean forward and the range of her vision was limited to the angle at which she looked.

The track of the defendant railway company is located in the first block east of Washington Street and runs slightly northeast and southwest at the railroad crossing. Mill Street runs east and west and Washington Street north and south. The auto on this occasion had proceeded south on Washington to Mill Street and then turned east. From the east line of Washington Street to the center of the railroad track on Mill Street is 84 feet. The railroad track is upon a fill 4.68 feet above the surface of Mill Street on the west side and 13 feet above a point 150 feet east of the railroad track. At the time of the accident there was a one-story house known as the Bragg house on the northeast corner of Washington and Mill Streets. Mill Street is about 40 feet wide and from the east line of the Bragg house to the center of the railroad track is 49 feet. Plaintiff therefore

after making the turn from Washington Street east onto Mill
Street had an obstructed vision to the north and northeast until
she was within about 50 feet of the track. The line of direction
of the track aided her somewhat in her view to the northeast
from which direction the train was approaching.

She testified: "After we turned into the east and west
road and were proceeding east on Mill Street, I looked to see
if a train was coming from the north. I was in such a position
I could see to the north through the window a short distance.
I don't know what distance. I didn't look out of the window
squarely. I had to move my head around to the left so I could
see to the left."

This little opening was about a foot in front of her face.
She was so situated that she was unable to get a complete view
up the track for any considerable distance and the view she did
obtain was at an angle, and limited to the time that the car in
which she was riding traveled 45 to 50 feet requiring from 3 to
4 seconds.

Under the evidence it may not be said with "certainty to a
certain extent in every particular" that the train was within
her line of vision at the time she looked through the curtain
window. Therefore this court will not say as a matter of law
that plaintiff is guilty of contributory negligence. *Butterfield
v. Chicago, R. I. & P. R. Co.* 193 Iowa 323, 325.

This is not a case involving the failure of the plaintiff to
look for danger when the danger is plainly visible for such dis-
tance and for such space of time that one would have been able
to see the danger and avoid the injury. The jury could find that
the plaintiff did look and within a reasonable distance of the
crossing. The physical-fact rule has been applied in cases where
the train was in plain sight when the party looked or claimed
to have looked and his angle of vision enabled him to see the
train had he looked, and his opportunity for observation was in
time to avert the accident. It also contemplates that there were
no diverting circumstances. *Beemer v. Chicago, R. I. & P. R.
Co.* 181 Iowa 642; *Sackett v. Chicago G. W. R. Co.* 187 Iowa
994; *Powers v. Iowa Cent. R. Co.* 157 Iowa 347; *Sturgeon v.
Minneapolis & St. L. R. Co.* 187 Iowa 645; *Landis v. Interurban
R. Co.* 166 Iowa 20, 37.

The instant case calls for the application of the reasonably prudent person rule. Did the plaintiff act as a reasonably prudent person should have acted under similar circumstances? She was under obligation of looking and listening for approaching trains within a reasonable distance of the crossing and she had no right to assume that no train would pass. She was bound by the same degree of care required of any traveler about to cross a dangerous intersection. Plaintiff was not in charge of the machine and she had the right to observe and rely upon what the driver was doing and his care for the safety of himself and other passengers. This did not absolve plaintiff from her duty to use reasonable care, but a court is not privileged to say that the passenger is guilty of negligence because the same degree of vigilance in looking and listening is not exercised as is required of the person having control and management of the vehicle. It is a question of degree, but it is ordinary care under the circumstances nevertheless, and ordinarily a jury question. *Thomas v. Illinois Cent. R. Co.*, 169 Iowa 337; *Bradley v. Interurban R. Co.* 191 Iowa 1351; *Howe v. Minneapolis, St. P. & S. M. R. Co.* 62 Minn. 71 (64 N. W. 102).

It is by these tests that her negligence must be measured but there is no fixed or inflexible rule. The law does not fix any point at which the traveler must look and listen or be chargeable with contributory negligence. *Willfong v. Omaha & St. L. R. Co.* 116 Iowa 548; *Schulte v. Chicago, M. & St. P. R. Co.* 114 Iowa 89; *Davitt v. Chicago G. W. R. Co.* 164 Iowa 216; *Brossard v. Chicago, M. & St. P. R. Co.* 167 Iowa 703; *Platter v. Minneapolis & St. L. R. Co.* 162 Iowa 142; *Barrett v. Minneapolis & St. P. R. Co.* 190 Iowa 509, 525.

Sufficient to state that the question presented is one for the jury under the circumstances of the instant case.

II. Error is predicated on the admission of an ordinance of the town of Lineville and the instruction of the court based thereon. One of the specifications of negligence alleged by

2. RAILROADS: accidents at crossings: ordinance: application.

plaintiff in her petition is "in running and operating said train at an excessive, dangerous, and reckless rate of speed, and in violation of the statute and ordinance of said town of Lineville, Iowa."

The ordinance is pleaded and provides that "any person,

company, or corporation that shall run a train or locomotive at a greater rate of speed than eight miles per hour within the platted part of the town of Lineville where tracks are not fenced shall be guilty of a misdemeanor.'' The language of this ordinance was embodied in one of the instructions given by the court, with the further instruction that the alleged negligence must be found to be the proximate cause of the injury.

When an ordinance is pleaded it is necessary that the proof of plaintiff is within the provisions of the ordinance.  *Eakins v. Chicago, R. I. & P. R. Co.* 126 Iowa 324.

It is undisputed that the accident did happen within the platted part of the town of Lineville and that the defendant's train was moving in excess of eight miles per hour at the time and place of the accident.  It is the claim of the appellant that the proof fails to show that the tracks were not fenced.  It is conclusively so shown.  In deciding this question however we are not primarily concerned with the photographs offered in evidence.  It is quite apparent that the crossing in question was not fenced.  The platted portion of the town extends to the fairgrounds crossing in Lineville.  We must give the ordinance a reasonable intendment.  Clearly the limit of the speed of a train is referable to the unfenced platted portion of the town where there were no open crossings.  Quite frequently the corporate limits include a platted portion of a town where there are no open crossings, and it is to this part of the agricultural section of the town that the fencing portion of the ordinance finds application.  The railroad having no right to fence where this accident happened it was unnecessary on the part of the plaintiff to show that the tracks were not fenced.  *Blanford v. Minneapolis & St. L. R. Co.* 71 Iowa 310.  See, also, *Gibson v. Illinois Cent. R. Co.* 136 Iowa 415; *Long v. Central Iowa R. Co.* 64 Iowa 657; *Lathrop v. Central Iowa R. Co.* 69 Iowa 105.

III.   It is further contended that the court erred in the instructions with reference to the alleged negligence of the defendant in failing to give a warning by sounding the whistle at a reasonable distance from the crossing.

3. RAILROADS: accidents at crossings: failure to blow whistle.      The statute does not provide that the whistle shall be sounded within the limits of a town as a train approaches a crossing.  Nevertheless it may be a jury

question, under all the facts and circumstances, whether in the exercise of reasonable and ordinary care the sounding of the whistle was required. It was a railroad crossing. It was located in the town. It was a used crossing.

It is not sufficient under all circumstances that a railroad shall observe only the mandate of a statute. Statutory provisions are viewed as the minimum of care. The degree of care required of a railroad train in approaching a crossing is such as should be used under all the circumstances and this is usually a question for the jury. The fact that the railroad company gave such signals as are required by statute does not necessarily absolve it from giving such other and additional signals or warnings as ordinary care and prudence would dictate under the circumstances of the particular case. This matter is dependent upon the character of the crossing, the number, kind, and efficacy of the signals required, the speed of the train, and the surrounding circumstances. *Bettinger v. Loring,* 168 Iowa 103; *Wiese v. Chicago G. W. R. Co.* 182 Iowa 508; *Hart v. Chicago, R. I. & P. R. Co.* 56 Iowa 166.

The town of Lineville has a population of 752. Mill Street was one of the principal streets of the town and is the only road leading to the east until the fairgrounds crossing is reached one-half mile north. On approaching the crossing from the west there was an obstruction to the view of a person. There was an incline to the track from both sides of the crossing, and the approach from the east was quite steep. The track is somewhat down grade. All of these facts were proper to be considered, and although it was not negligence *per se* to fail to blow the whistle it was for the jury to say whether ordinary care under all the circumstances required the warning to be given.

Complaint is made that the court instructed the jury to consider "the travel on the street or highway" and appellant contends there is no evidence as to the amount of the travel over the crossing. If this reference to travel was error it was error without prejudice. It was a used crossing on a main street of the town and there was but one other crossing. A minimum of travel would warrant a finding of a minimum of care in the particular alleged.

IV. We now turn to the instructions bearing on the ele-

ments of damage.  Complaint is made that the court submitted
to the jury the question of the value of the time lost by plaintiff
resulting from the injuries received.  The spe-
cific objection is that there was no proof of that
value.  Plaintiff had no independent business or
vocation.  She was a housewife and mother.  Under our statute
when *any woman* receives an injury caused by the negligence or
wrongful act of any person, firm or corporation she may recover
for loss of time.  Section 3477-a Code Supplemental Supplement
1915.

4. DAMAGES: loss of time of housewife.

Prior to the enactment of this statute plaintiff would have
no cause of action for the value of her services except in the
event she had an independent business or calling.  The value
of the services of a housewife cannot be quantitatively measured
in terms of money.  Such services are in a different category
than compensated employment, yet no one will claim that such
services are not valuable.  They should be recognized in the realm
of law as in the domain of economics.  Pain and suffering, like-
wise, cannot be definitely or adequately measured in dollars and
cents, but this fact does not preclude an injured person from
recovering for these elements of damages.

The amount of recovery for loss of time or value of services
is a matter within the discretion of the jury "and the best that
can be done is to prove the facts and circumstances of the
woman's life and service in these capacities, her age, health, and
strength, her expectancy of life, and all that may appear to
enlighten the minds and aid the judgment of the jurors."
*Bridenstine v. Iowa City Elec. R. Co.* 181 Iowa 1124.  See, also,
*Fisher v. Ellston,* 174 Iowa 364; *Buffalo v. City of Des Moines,*
193 Iowa 194.

Plaintiff's proof conformed to the matters suggested in the
foregoing quotation, and the jury was instructed to take into
consideration the reasonable value of the time plaintiff lost as
a result of her injury, "and if the jury find from the evidence
that the injury to the plaintiff is permanent, that, prior to the
injury, she was a mother and housewife, capable of rendering
services as a mother and housewife by physical labor, and that
said injury has, in whole or in part, incapacitated her from per-
forming manual labor as such mother and housewife, then you

may take such facts into consideration in determining plaintiff's damages.''

The jury was further instructed that there is no fixed or specific rule by which to measure the amount plaintiff should recover for pain and suffering or the value of the services of the plaintiff as a mother and a housewife, ''but the jury should allow for these elements of damage such sum as meets with approval of the well considered and deliberate judgment of the jury.''

It is further contended by appellant that Section 3477-a gives no cause of action to the wife by reason of the impairment of her capacity for manual labor as a wife and mother, but that this element of damage accrues only to the administrator of her estate in case of her death. Is it the intent of the statute to create a separate and independent cause of action for the wrongful death of a woman, which cause first inures to her administrator, and is distinct and independent from any cause of action arising to the decedent in her lifetime for the same injury?

5. HUSBAND AND WIFE: injury of wife: damages: loss of time.

Prior to the statute lost time or value of services of a wife belonged to the husband. The statute in question recognizes the substantial value of the services of a wife or mother. It is a statute of emancipation and in the first division thereof allows her to recover during her lifetime for loss of time and in the second division thereof allows her administrator to recover for, services as wife and mother. They are responsive to each other, ''and are parts of the same thing as applied to a married woman.'' *Gardner v. Beck* 195 Iowa 62.

In the *Gardner* case it is held that the statute does not purport to create a new cause of action to accrue in the first instance to the administrator of a woman but that it does create new elements of damage. Further that these new elements of damage attach to the original cause of action arising in the lifetime of the decedent and include the damages ensuing therefrom during the lifetime of the decedent as well as for her wrongful death. This must be true. It is the only reasonable construction of which the statute is susceptible. We will not presume that the legislature intended to create a right without a remedy.

V.   Is the verdict excessive?   The jury awarded the sum

of $10,500. The limitation of the statute is $15,000. The record discloses that plaintiff incurred no hospital expense, no nurse hire, no doctor's fee. Nor does the record show the monetary expenditures that usually accompany personal injury actions. The nature of the injury necessarily caused the plaintiff great pain and suffering. She was confined to her bed about a month, but within a few months after the accident was able to walk around. The injury is permanent in that it produced a "rolling or waddling" gait by reason of a fracture of the pelvic bone. She supervises her housework. She is in a position to train and care for her children, and to assist her husband in his church work.

**6. NEW TRIAL: verdict: excessiveness: $10,500.**

In the light of the record we reach the conclusion that the verdict is excessive and will be reduced to the sum of $8,000. If plaintiff elects to accept the sum of $8,000 with interest at 6 per cent from date of judgment, and files with the clerk of this court a remittitur within 30 days from the filing of this opinion the cause will stand affirmed, otherwise reversed.—*Affirmed on condition.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.