VERDA NEDERHISER, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Diverting Circumstances. The operator of an automobile when entering upon a known railway crossing is held to know that he is entering a zone of danger; yet (1) the absence of statutory signals, (2) the obscured nature of the crossing, and (3) the distracting influence of other passing vehicles and of near-by objects, may save the operator from the imputation of contributory negligence *per se*. (See Book of Anno., Vol. 1, Sec. 8018, Anno. 33 *et seq.*)

**NEW TRIAL:** Verdict—Excessiveness—$5,000. Verdict of $5,000 for personal injury held nonexcessive. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 324 *et seq.*)

Headnote 1:  33 Cyc. p. 985.  Headnote 2:  17 C. J. p. 1091.

Headnote 1:  21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702; 6 A. L. R. 681; 27 A. L. R. 1202; 22 R. C. L. 1015. Headnote 2:  8 R. C. L. 673; L. R. A. 1915F, 30.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

MAY 11, 1926.

REHEARING DENIED SEPTEMBER 24, 1926.

Action to recover damages for personal injuries sustained by plaintiff, the driver of a Ford coupé, in a collision with a passenger train of the defendant's at the intersection of a public highway and the defendant's railroad tracks in the town of Ely, Iowa. At the close of plaintiff's testimony and of all the testimony, defendant interposed a motion for a directed verdict,

which was overruled. A verdict was returned for the plaintiff in the sum of $5,000. From the judgment entered thereon the defendant appeals.—*Affirmed.*

*Deacon, Sargent & Spangler, J. G. Gamble, R. L. Read,* and *A. B. Howland,* for appellant.

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellee.

DE GRAFF, C. J.—I. This is a railroad-crossing case. The factual events to which the plaintiff's cause of action relates call for the determination of the resulting liability, if any, of the defendant railroad. This case, like most cases of this character, presents a double aspect: (1) The negligence of the defendant; (2) the contributory negligence of the plaintiff.

The negligence alleged and submitted to the jury involves (1) the failure of the defendant to cause a bell on the engine (as required by statute) to be rung continuously from a point 60 rods south of the crossing where the collision occurred, and until the engine of the train reached the crossing; and (2) the failure of the employees in charge of said train to sound a whistle or give other warning of the train's approach to the crossing. The evidence bearing on these specifications is in conflict, and consequently a jury question is presented in these particulars.

The contributory negligence of the plaintiff is the only debatable question on this appeal; but in the last analysis, there is nothing presented, either on the law or on the facts, that suggests a new thesis to this court in writing this opinion.

We have recognized that courts should not and do not look lightly upon the act of driving an automobile over a railroad crossing in front of an on-coming train, as the power of prevention rests ordinarily more with the autoist than with the engineer of the train. *Rupener v. Cedar Rapids & I. C. R. & L. Co.,* 178 Iowa 615; *Beemer v. Chicago, R. I. & P. R. Co.,* 181 Iowa 642. An autoist cognizant of the fact that he is approaching a railroad crossing is bound to know that he is about to enter a danger zone. *High v. Waterloo, C. F. & N. R. Co.,* 195 Iowa 304. An injured traveler, as plaintiff, has the burden to prove that

1. RAILROADS: accidents at crossings: diverting circumstances.

he used ordinary care under the circumstances. *Dusold v. Chicago G. W. R. Co.*, 162 Iowa 441·

Let us first turn to the record facts. The accident happened about 100 feet south of the depot in the town of Ely. At this point the public highway is crossed by the tracks of the defendant railroad company. Plaintiff was acquainted with the situation. The highway runs east and west, and the railroad tracks approximately north and south. The Ford coupé driven by plaintiff was traveling west, and the train north, when the collision occurred.

The public highway is 43 feet wide, with a 16-foot plank crossing laid parallel to the rails. There are four tracks at this intersection. The first and second tracks, as you approach from the east, are known as passing tracks. The next or third track is the main-line track. The fourth is a passing or elevator track, but it is not material in the geography of the instant case. When one approaches the crossing from the east, the easterly line of the right of way to the first track is 18 feet, to the east rail of the second track is 35 feet, and to the east rail of the third track or main line is 49 feet.

At the time in question, there was a cornfield immediately south of the public highway and close to the fence on the east line of the right of way. The date of the accident was July 24, 1923, and the growing corn at the place aforesaid was about 10 feet high. The standing corn extended for a considerable distance east of the right of way, and constituted a complete obstruction to the south or southwest view of a traveler going west on the highway until he reached a point near the east line of the right of way.

The auto in question was traveling about 10 miles an hour on the north of the center, or near the center, of the highway. On approaching the crossing from the east, the traveler, when 50 or 60 feet east of the main-line track, could see, on a diagonal line of vision, 100 to 150 feet down the main-line track.

Prior to the plaintiff's approach to the crossing, and when she was about 1,000 feet east of the crossing, she observed on the second passing track a standing freight train, immediately north of the crossing, headed south. She testified that she listened for signals, as she approached the tracks, and that she looked to the south, when she reached the right-of-way-fence line,

or just before she got to it, and could see a clear track for 100 to 150 feet. She was then 50 to 60 feet east of the main-line track. As she approached nearer the crossing, she saw a Ford truck coming east. This was just before she crossed the first or passing track. The front wheels of the Ford truck were on the first track that she approached, and as she drove onto the track, the truck was opposite her car, passing her to the left. On this truck were some chicken coops, and on top of the coops four children were riding. She testified:

"I looked at the Ford as it passed. I looked to the south, before I passed the truck, just before reaching the truck, some distance before I passed the corner of the cornfield. I could see about 100 or 150 feet south of the cornfield at that time. There was nothing on the defendant's tracks south that I could see at that time. I heard no train bell or signal. I heard no train coming. After I passed the truck, I was almost even with the standing freight train."

The cowcatcher of the freight train was either flush with the planking or a foot or two over the planking. It is also shown that, as she neared the tracks, her attention was attracted to the freight train by steam escaping from the engine, which "made a sound as though it appeared they were getting ready to start."

As plaintiff came up to the Ford truck, she states, she veered a little to the right with her car, having slowed down to 10 miles per hour, and just before she got in front of the freight engine, she increased her speed from 10 to 12 or 14 miles per hour. She increased the speed of her car "because I wanted to go around the freight train. I was afraid it might start up."

When she was in front of the standing freight train, she heard a noise from the south, and it was then that she saw the passenger train almost upon her. She tried to stop her car, but failed. This is all that she remembers, prior to the collision, for the reason that the impact rendered her unconscious.

She passed the truck about 31 feet from the main-line track. She had looked to the south for a train, immediately prior to this time. It is apparent that, in the distance between the edge of the cornfield and the front of the freight train, about 10 feet of that distance was momentarily obscured by the passing truck. It is also shown that plaintiff's view to the north was completely

obstructed by the long freight train standing on the second track.  After she increased her speed, upon passing the truck, she traveled about 17 feet before she got in front of the freight train, and, as she claims, was then compelled to skirt the pilot of the freight locomotive.  This would leave some 12 to 14 feet to the place of the collision.

We now turn to the law of the case.  The difficulty does not lie in the legal principle, but in the application of the test or standard to the facts, which are seldom, if ever, without conflict. The plaintiff testified that she looked and listened, and the jury could find that the plaintiff did look, within a reasonable distance of the crossing.

This case cannot be determined by the physical-fact rule frequently invoked.  We must adopt the reasonably-prudent-person rule.  *Glanville v. Chicago, R. I. & P. R. Co.*, 196 Iowa 456.  A "person of ordinary care and prudence" seems to have a fairly well defined meaning, in the range of human affairs. Clearly, a standard must be fixed, and applicable to all persons, with special exceptions noted.  This results in an application of a general principle.  True, our legal conclusions under a given state of facts are more or less generalizations, but sufficiently specific to serve as criteria, as new cases present themselves. Although standards of law must be standards of general application, it is not always easy to differentiate cases and to satisfy ourselves that the general principle involved has been correctly applied.  Is the plaintiff within the general rule, under the instant facts?

In the selection of the time and place for making observations before going upon a railroad crossing, ordinary care must be exercised, but it is ordinary care under all of the attendant circumstances.  The place selected must be such that the observation will be reasonably effective.  A traveler on a highway, realizing that he is about to cross a railroad track, must look when by looking he can see, and listen when by listening he can hear.  *McFarland v. Illinois Cent. R. Co.*, 193 Iowa 776.

It is for the jury, ordinarily, to determine whether a traveler about to go upon a crossing selected a proper place for making observation, and otherwise exercised ordinary care for his own safety.  *Case v. Chicago G. W. R. Co.*, 147 Iowa 747.

It is impossible to affirm the precise number of feet from a

crossing at which a traveler must look and listen. The looking should be within a reasonable distance before going upon the crossing, and the duty to look is a continuing duty. We have held, however, that it is not negligence *per se* to fail to look at any particular point, and an instruction making it the duty of a traveler to look at all points in his passage has been condemned. *Winey v. Chicago, M. & St. P. R. Co.,* 92 Iowa 622. See, also, *Davitt v. Chicago G. W. R. Co.,* 164 Iowa 216; *Mitchell v. Union Terminal R. Co.,* 122 Iowa 237.

A traveler approaching a crossing is bound to look both ways, or up and down the tracks. This does not compel him to look in any particular direction first, and the frequency with which he should change the direction of his observation depends upon the circumstances, and usually presents a jury question. If a greater danger is reasonably to be expected from one direction than from another, the traveler would be justified in paying more attention to that direction. The best that can be done is to adopt the general rule, and permit the jury to apply that rule to the particular circumstances. We do not mean that in every case a jury question is presented; and the physical-fact rule has been applied by this court where the train must have been in plain sight when the party looked, or claimed to have looked, and his angle of vision enabled him to see the train, had he looked.

Furthermore, it is not for a court to say that some other course might have been better and safer; and this is especially true when a traveler is placed in a position of imminent peril by reason of the railroad company's negligence, as in failing to give proper signals. That plaintiff would not have been struck by the train, had she acted differently than she did, does not conclusively show contributory negligence on her part. *Wiese v. Chicago G. W. R. Co.,* 182 Iowa 508.

There may be circumstances, as there are in the instant case, which tend to complicate the question of contributory negligence and make it a question for the jury. *Laverenz v. Chicago, R. I. & P. R. Co.,* 56 Iowa 689; *Selensky v. Chicago G. W. R. Co.,* 120 Iowa 113.

Plaintiff had the right to rely upon the presumption that the trainmen would perform their duties and sound their signals of warning in approaching the crossing, and the jury in the

present case could find that the warnings required by law to be given were not given by the engineer on his approach to the crossing.

It is quite difficult, under the instant circumstances, to divorce the reciprocal duties of railroad and traveler. The latter will not be excused from his own negligence if it may be said that he gave attention to a matter foreign to his immediate surroundings, if no particular reason for so doing existed. *Ballard v. Chicago, R. I. & P. R. Co.*, 193 Iowa 672. Compare *Yanaway v. Chicago, R. I. & P. R. Co.*, 195 Iowa 86.

When the jury could find that plaintiff looked and listened when within a reasonable distance of the crossing, a court ordinarily will not attempt to say, as a matter of law, that the traveler is guilty of contributory negligence because he did not look and listen again from some other designated point from which he might possibly or probably have discovered the train. We are not dealing with perfect care and caution on the part of the plaintiff, but with whether, under all the attending circumstances, she exercised ordinary care to protect herself from injury.

We will not pursue the inquiry further. After a careful consideration of the record, we conclude that a fact question was presented, and that the trial court correctly ruled defendant's motion for a directed verdict.

II. Complaint is made that the verdict is excessive. The verdict is for $5,000. The collision happened on July 24, 1923. Immediately after the accident, the plaintiff was taken to St. Luke's Hospital, in Cedar Rapids, where she remained for three weeks. She then went to the home of her aunt for one week, and then to her own home.

That the plaintiff received most painful injuries, there can be no question. She received a cut about six inches long and four inches deep on the right buttock, which left a scar about three fourths of an inch wide and six inches long. There was a compound fracture of her great toe, which permanently deformed it. The first phalanx on the second toe was mashed, and also the end of the third toe. Her head was badly scraped, causing the loss of some of her hair, and the concussion rendered her unconscious. The index finger on her right hand was mashed to the extent

2. NEW TRIAL: verdict: excessiveness: $5,000.

that the tendons on both sides were exposed. This left the finger scarred, hooked, and permanently stiff. She also received serious injury to the sacroiliac joint, which is described by the attending physicians as a sacroiliac strain. She did make a fairly speedy recovery, but "the chances are not very good as to her complete recovery."

It would be quite arbitrary on the part of the court, in view of the kind and character of the injuries received, the pain suffered, and the expense incident to hospital and medical services, to disturb the amount of the verdict returned.

Other points are presented by appellant, but no purpose is served in reviewing them. Sufficient to state that we discover no reversible error in the matters urged in argument.

The judgment entered is—*Affirmed.*

EVANS, FAVILLE, and ALBERT, JJ., concur.