WINIFRED HUTCHINSON, Appellee, v. SIOUX CITY SERVICE COMPANY et al., Appellants.

No. 40213.

APRIL 14, 1930.

10

*Stewart & Hatfield,* for Sioux City Service Company, appellant.

*Hays, Baron & Mathews* and *Baron & Bolton,* for Charles Babcock, appellant.

*Strong & Seff,* for appellee.

WAGNER, J.—The injury suffered by the plaintiff is the result of a collision between a street car upon the track of the defendant Sioux City Service Company and a motor truck owned by the defendant Babcock and operated, at the time in question, by the driver Palmer. It is the claim of the plaintiff that, at the time in question, the defendant Service Company was negligent, and that the driver of the truck in which plaintiff was riding as a guest or passenger, not for hire, was guilty of reckless operation thereof, and that the negligence of the former and the reckless operation of the latter concurred in producing the collision which resulted in her injury. At the close of plaintiff's evidence, and at the close of all the evidence, each defendant moved for a directed verdict, on various grounds, including the ground that the evidence showed that the plaintiff was guilty of contributory negligence, as a matter of law, and that it was not sufficient to establish her freedom from contributory negligence. Said motions were overruled. The proposition was again raised in the motions for a new trial, which were overruled.

While there are various interesting propositions presented, it appears to us that, under the record, the determination of the aforesaid question is decisive. We therefore turn to the record, to ascertain the facts.

One Palmer was engaged by Babcock in operating a motor truck in the carrying of articles of freight between Vermilion, South Dakota, and Sioux City, Iowa, and intervening points. Palmer left Vermilion at 4 o'clock in the morning, making the

trip to Sioux City, and leaving Sioux City for his return trip about noon. Three young ladies, including the plaintiff, wanted to come from Vermilion to Sioux City on August 1, 1928, and return the same day. On the evening before, one of them, by telephonic communication, secured permission from Palmer to make the trip with him the following morning. As per arrangement, the three girls met Palmer at 4 o'clock on the morning of August 1st, when the trip was begun. The seat across the cab portion of the truck extends clear across the truck, a distance of 6 feet and 7 inches. This afforded convenient seating space for the driver and the three girls. The front portion of the cab was glass, and anyone in the cab had a clear vision forward. There was also a window to the left of the seat, which was down at the time in question. There was attached in a conspicuous place in the cab the following:

"Warning Notice: All persons, except employees, are forbidden on this vehicle. Any other who rides hereon, despite such notice, does so at his own risk and peril."

After daybreak, when on the route, this notice was read and discussed by the three girls. They arrived at Sioux City about 6:30 A.M., and made arrangements with Palmer as to when they should meet him for the return trip, which was about noon. Upon leaving the depot, the other two girls were seated to the right, and the plaintiff to the left, of the driver.

The accident occurred at the intersection of the street railway with what is known in the record as the "Military Road." From the place where they entered this road to the place of the accident the roadway runs in a northwesterly direction, but for convenience (as is also done by counsel), we will call it an east and west road. The "Military Road" is traveled in going from North Riverside, a suburb of Sioux City, across the Big Sioux River into South Dakota. Along the south side of the "Military Road" is the track of the street railway. The terminus of this track is a short distance this side of the bridge across the Big Sioux River. At the terminus, the track crosses the road at an angle of 45 degrees, and makes a loop to the north and west, which affords the means for the street cars to turn around for the return trip to the city. The "Military Road" is paved, the pavement being 16 feet wide. Measuring from the

north edge of the north sidewalk along the railway track, it is 33 feet from the north edge of the sidewalk to the north side of the paving, and from the north side of the paving to the south side of the paving it is 28 feet, and from the south side of the paving to the north line of the street railway, running east, it is 8½ feet. That portion of the road not paved was also suitable and used for travel. In returning from the loop, the street car came along the westerly edge of what is known in the record as Boies Street, which veers off from the "Military Road" at an angle of 45 degrees. At the time of the collision, the street car was crossing the "Military Road." This street car was 40 feet in length, and as it proceeded, the rear end was still upon the pavement when the truck, coming from the east, struck it broadside, somewhere back of the center of the street car, and from there the truck, in some manner, was turned in a northwesterly direction into Boies Street, where it came in contact with a pole used in connection with the transmission of electricity. The plaintiff called the motorman in charge of the street car, as a witness, who testified that it was a bright, clear day, and the streets were dry (this is undisputed) ; that, when the street car was about at the north sidewalk, he looked east, and saw the truck coming at about the Council Oak Store, which, the uncontradicted evidence shows, is 290 feet east from the crossing; that he then looked to the west, and, seeing several automobiles approaching from that direction, he proceeded slowly until they slowed up; that, proceeding across the crossing, on looking east, after having looked west, he saw the truck about 50 feet away, approaching him; that, at that time, the front end of his car was clear past the center, almost to the south side of the paving; that he put on more power, thinking that he could get away from it, but the collision occurred. The testimony is uncontradicted that at no time was the street car, while crossing the road, traveling at a rate of speed to exceed 5 or 6 miles an hour.

It will be observed that the truck approached the street railway from the east. Palmer, being called as a witness for the plaintiff, testified, in substance, that, as he was proceeding westerly on the "Military Road," he was traveling 18 or 20 miles an hour (there is other testimony that he was proceeding from 30 to 35 miles per hour) ; that, the first time he saw the

street car, he was 65 or 70 feet from the crossing,—''might have been a little farther away;'' that his first thought was to turn left, to avoid an accident, and his second thought was that his only chance was to turn to the right, when almost instantaneously the collision occurred.

To the north side of the highway, 150 feet east of the crossing, is an ordinary sign, used in primary road construction, denoting the proximity of a railroad crossing.

The evidence discloses that, from a point in the line of the railway 30 feet northwesterly from the north edge of the north sidewalk, and all other points lying to the south of a straight line running from said point to a point in the center of the pavement, 215 feet east of the crossing, there is no obstruction to the view of anyone coming from the east, except two telephone poles to the side of the highway. It must be conceded that these two poles did not afford any consequential obstruction to the view.

As Palmer and the three girls came from the east, the plaintiff was located in the seat in the cab on the south side; the window by her left arm was open; she states that she was sitting comfortably. On being asked what she was doing as she approached the crossing, she answered that she was looking to her left, out of the side window, which was open; that she did not see much; that she heard one of the girls yell ''Stop,'' and she turned her face, and by that time the accident had happened. She also testified that she had made the trip from Vermilion to Sioux City before, with friends, over this same road and this same crossing; that she had come over that crossing just that morning; that she was fully informed as to its location and surroundings. The question presented is: Is the evidence sufficient to establish her freedom from contributory negligence? She was approaching a place of danger, of which she was informed. She knew that the place of danger was in front of her. It was the street car which formed the obstruction in the highway with which the truck in which she was riding came in contact. It is apparent that no injury would have occurred to the plaintiff without the presence of the street car upon the pavement, in plain view of the plaintiff. It must be borne in mind that her line of vision was just as good as that of the driver. Had she looked, she must have seen the street car. The

physical facts are such that this must be true. From her evidence, she never looked toward the place of danger. She was apparently oblivious of any danger at the crossing. She was only a guest at the time in question, paying nothing for her transportation. She had also read and conversed about the "Warning Notice" hereinbefore referred to, whatever may be its legal significance. The record fails to disclose any distracting or diverting circumstances. There was no dust, mist, or fog to obscure her vision, as in some of our cases. On the contrary, it was a bright, clear, sunshiny day.

The appellee asserts that her reliance upon the skill, care, and judgment of the driver constitutes reasonable care, within the meaning of the law. Our cases are not in accord with appellee's contention. See *In re Estate of Hill*, 202 Iowa 1038; *Brown v. McAdoo*, 195 Iowa 286; *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642; *McFarland v. Illinois Cent. R. Co.*, 193 Iowa 776; *Ballard v. Chicago, R. I. & P. R. Co.*, 193 Iowa 672; *Wagner v. Kloster*, 188 Iowa 174; *Willis v. Schertz*, 188 Iowa 712; *Hubbard v. Bartholomew*, 163 Iowa 58; *Watson v. Boone Elec. Co.*, 163 Iowa 316; *Dow v. Des Moines City R. Co.*, 148 Iowa 429; *Willfong v. Omaha & St. L. R. Co.*, 116 Iowa 548. Also, see *Oppenheim v. Barkin*, 262 Mass. 281 (159 N. E. 628).

In *Brown v. McAdoo*, 195 Iowa 286, we said:

"The important and controlling question at this point is whether or not Brown [the party for the benefit of whose estate the action is brought] was under the same duty of exercising ordinary care as they approached the crossing as was Putnam, the driver of the car. Brown was familiar with the crossing. * * * According to the undisputed testimony, Brown was not looking in the direction of the train, and he did not look to the south at any time during the last 50 feet. *It is the duty of a passenger on the front seat in an automobile, approaching a railroad crossing, to use his senses and to look and listen, to determine whether there is danger from an approaching train.* It is also his duty to act as a man of ordinary care and prudence, under the circumstances, in doing all those acts and things which a man in his situation might reasonably be required to do under the same or similar circumstances, to avoid the threatened injury. Both driver *and passenger* approaching a railroad crossing must exercise ordinary care. In the instant

case, there was an eyewitness to the accident, in the person of the fireman of the train. He saw appellant's intestate as he approached the crossing, and testifies positively that he did not look in the direction of the train at all. It is therefore established that he did not exercise ordinary care." (The italics are ours.)

In *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642, we declared:

"It is well settled that, if one drives upon a railway crossing, which is a known place of danger, in front of an approaching train, the view of which is substantially unobstructed, without looking and listening, or if he looks and listens, and does not see a car which he should have seen, had he exercised reasonable care to see, or to hear, but says that he neither saw nor heard, he is guilty of contributory negligence as a matter of law. * * * It is urged by the appellant, however, that the negligence of the husband, if any, could not be imputed to the wife, and this may be conceded. The fact remains, however, that the wife, *seated beside her husband on the front seat, and with the same knowledge of the approach to the crossing and the danger thereof, was as much under the duty of lookout and discovery as he was.*" (The italics are ours.)

In *Ballard v. Chicago, R. I. & P. R. Co.*, 193 Iowa 672, we reannounced:

"It may not be said that a traveler on a highway approaching a zone of danger can give attention to something without any particular reason for so doing, and thereby fail to exercise his natural senses for his own protection."

In *Wagner v. Kloster*, 188 Iowa 174, we made the following pronouncement:

"The plaintiff, even though a guest, must have exercised ordinary care for his own protection."

In *Willis v. Schertz*, 188 Iowa 712, we said:

"Kleen's negligence [that of the driver], if such there was, might not be imputed to the plaintiff. Nevertheless, she must

have exercised ordinary care, having due regard to her situation as guest of the driver.''

In *Glanville v. Chicago, R. I. & P. R. Co.*, 196 Iowa 456, we declared:

''She [the plaintiff and passenger] was under obligation of looking and listening for approaching trains within a reasonable distance of the crossing, and she had no right to assume that no train would pass. She was bound by the same degree of care required of any traveler about to cross a dangerous intersection.''

In *Johnson v. Omaha & C. B. St. R. Co.*, 194 Iowa 1230, we made the following pronouncement:

''The fact that her husband was acting as driver of the car did not absolve her from responsibility in regard to the exercise of care on her own part, under the circumstances, to avoid an accident.''

In *Butterfield v. Chicago, R. I. & P. R. Co.*, 193 Iowa 323, we said:

''He would not, of course, be justified in shutting his eyes and ears and failing to make reasonable use of his senses * * *.''

In *Dow v. Des Moines City R. Co.*, 148 Iowa 429, it is declared:

''We have never held that one may go heedlessly and blindly upon a street-car or other track and still be free from contributory negligence. * * * To go upon the track of either a steam or street railway without exercising any care for his safety is negligence, and such negligence will prevent a recovery.''

It is thus apparent that our holdings are that a guest in the front seat of a motor vehicle, with opportunity to see what is to be seen, equal to that of the driver, and where there are no diverting circumstances, cannot completely surrender himself to the care of the driver and then successfully contend that he (the guest) was in the exercise of ordinary care. The record in this case reveals no care or caution whatever exercised by the plaintiff for her own safety and protection. She did not

see and did not look. The motions of defendants for a directed verdict should have been sustained.

Our conclusion at this point makes it unnecessary to consider other propositions presented and argued.

For the foregoing reasons, the judgment of the trial court is hereby reversed.—*Reversed.*

EVANS, DE GRAFF, ALBERT, and GRIMM, JJ., concur.

KINDIG, J., not participating.